**HARRISON v. SHARPE. (No. 1497.)**

(Court of Civil Appeals of Texas. Amarillo. March 19, 1919. On Motion for Rehearing, April 16, 1919.)

1. PROCESS ⟨⟩149—IMPEACHMENT OF RETURN —NECESSITY OF CORROBORATION.

The return of a citation may not be impeached by the testimony of one witness unless strongly corroborated by other evidence.

2. PROCESS ⟨⟩149—IMPEACHMENT OF RETURN —CORROBORATING EVIDENCE.

Corroborating evidence to impeach the return of a citation must be from other sources than from the witness who requires corroboration.

3. WITNESSES ⟨⟩414(1)—CORROBORATING EVIDENCE—SUFFICIENCY.

Corroborating evidence is not required to be direct and positive; it may consist of facts and circumstances which tend to show that the direct evidence sought to be corroborated is worthy of credit.

4. PROCESS ⟨⟩149—IMPEACHMENT OF RETURN —CORROBORATION.

In a suit to set aside a tax judgment and proceedings thereunder brought by the owner of the property, evidence *held* to corroborate plaintiff's testimony that no citation or process in the tax suit had ever been served on her, notwithstanding the recitals of the return and that she had no notice of the proceedings until after the sale.

5. TAXATION ⟨⟩689(3)—JUDGMENT AND SALE —PROCEEDINGS TO SET ASIDE—PLEADING— IMPEACHING RETURN OF PROCESS.

In a suit to set aside a tax judgment and sale thereunder because no citation had been served on plaintiff, who was the owner of the property, notwithstanding the return of the citation recited service, it was not necessary for plaintiff to allege that the falsity of the return was due to any action on the part of defendant.

6. TAXATION ⟨⟩689(3)—JUDGMENT AND SALE —SUIT TO SET ASIDE—COLLATERAL ATTACK.

A suit to set aside a tax judgment and sale thereunder brought by the owner on the ground that citation had not been served upon her, wherein the petition recited that the suit was in the nature of a bill of review to annul the judgment and proceedings, followed by a statement of facts upon which plaintiff relies, does not constitute a collateral attack on the tax proceedings.

7. TAXATION ⟨⟩689(3)—JUDGMENT AND SALE —SUITS TO SET ASIDE—PARTIES.

Where all taxes due the state have been paid to it, it is not a necessary party to a suit by a former owner to set aside a tax judgment and sale thereunder.

8. TAXATION ⟨⟩689(3)—JUDGMENT AND SALE —SUIT TO SET ASIDE—PLEADING.

The rule that one who seeks to set aside a judgment improperly rendered by default must state that he has a good defense to the cause

of action has no application to a suit to set aside a tax judgment and sale thereunder on the ground that no notice or citation was served on the owner.

9. TAXATION ⟨⟩648—JUDGMENT—COLLATERAL ATTACK—CONTRADICTION OF RECORD.

Tax judgment containing recitals showing jurisdiction may not be contradicted in collateral proceedings.

10. TAXATION ⟨⟩648—JUDGMENT — SUITS TO SET ASIDE.

Where a tax judgment has been rendered without citing defendant, the owner of the property, defendant may, within the period of statutory limitations, attack the judgment in a direct proceeding wherein equitable relief may be had as circumstances require.

11. TAXATION ⟨⟩689(2)—SALE—SUIT TO SET ASIDE—INNOCENT PURCHASERS.

Merely because the purchaser at a tax sale did not know that it was wrongfully or irregularly made does not prevent the sale from being set aside in a direct proceeding for that purpose.

12. TAXATION ⟨⟩689(2)—TAX SALE—SUIT TO SET ASIDE—RIGHTS OF INNOCENT PURCHASERS.

That property has been acquired at a tax sale by an innocent purchaser does not prevent the sale from being set aside because the owner of the property was not cited in the tax proceedings, where the purchaser will receive an unconscionable profit in the owner's loss if he be allowed to retain the property and where he can be placed in status quo.

On Motion for Rehearing.

13. TAXATION ⟨⟩689(3)—TAX SALE—SUITS TO SET ASIDE—RELIEF.

Where property has been sold under a tax judgment without citing the owner and has been purchased by an innocent party at the tax sale, the sale merely will be set aside, and the judgment left undisturbed.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by Mary A. Sharpe against Edward T. Harrison to set aside a judgment and all proceedings thereunder in a tax suit. Decree for plaintiff, and defendant appeals. Modified and affirmed.

Goggans & Smedley and J. N. Townsend, all of Dallas, for appellant.

Walter M. Nold and Spence, Haven & Smithdeal, all of Dallas, for appellee.

BOYCE, J. This suit was brought by appellee, Mrs. Sharpe, a widow, against appellant, Edward T. Harrison, to set aside a judgment and all proceedings had thereunder in tax suit No. 3979b in the Forty-Fourth district court of Dallas county, styled the State of Texas v. Mrs. Mary A. Sharpe. This judgment was rendered on November 10, 1910, foreclosing a lien for the taxes of 1907

amounting to $7.61, and accrued costs, on two acres of land in the city of Dallas owned by Mrs. Sharpe. The judgment recited, and the return on citation showed, personal service of citation on the defendant in said cause. Thereafter, on April 14, 1911, the property was sold on order of sale issued out of said suit and bought by Edward T. Harrison, defendant in this suit, for $110, $30.03, of which amount was paid in discharge of the judgment and costs, and $79.97 deposited in the registry of the court. Plaintiff alleged that she was not served with citation, did not receive notice of sale, and had no notice whatever of said proceedings in the said tax suit until February, 1916. She disclaimed all interest in the said sum of $79.97, in the registry of the court, and tendered to defendant the sum of $33.03, with interest thereon, applied in satisfaction of the said judgment, and offered to pay whatever other sum the court might determine ought in equity to be paid the defendant upon the setting aside of said judgment. The defendant pleaded that service of citation was had in said cause, and that all proceedings therein were regular, and that he was an innocent purchaser for value.

Trial was had before the court, and the trial judge found that Mrs. Sharpe was not served with any citation in said suit, and that she had no notice whatever of said proceedings until the month of February, 1916, that the property at the time of its sale was of the value of not less than $3,500, and that the said sum of $110 paid therefor by the defendant Harrison was grossly inadequate, and that the said Harrison was therefore not an innocent purchaser of said property for value. Judgment was entered canceling said judgment and all proceedings thereunder upon payment to the defendant of the sum of $110, with interest from the date of his purchase.

[1] It is first assigned that the evidence is insufficient to support the finding that Mrs. Sharpe was not served with citation in the tax suit because her testimony that she was not served is not sufficiently corroborated. It is the law that the return of a citation may not be impeached by the testimony of one witness unless strongly corroborated by other evidence. Gatlin v. Dibrell, 74 Tex. 36, 11 S. W. 908; Randall v. Collins, 58 Tex. 231; Pierce-Fordyce Oil Ass'n v. Staley, 190 S. W. 814; Godshalk v. Martin, 200 S. W. 535; Crawford v. Gibson, 203 S. W. 375; Swearingen v. Swearingen, 193 S. W. 442; Gallagher v. Teuscher & Co., 186 S. W. 409; McBride v. Kaulbach, 207 S. W. 576. So that the consideration of this assignment requires a summary of the evidence on this issue. In support of the return on the citation, in addition to its own recitals, which showed that it was served on July 14, 1909, was the testimony of the deputy sheriff, Roddy, who made the return, to the effect that he did serve the citation in person on Mrs. Sharpe. He testified that he called at her home several times for the purpose of making service; that on each occasion prior to the time when service was had he was met at the door by a young woman, about 30 years of age, who informed him that Mrs. Sharpe was out of town, on a visit, "up North," was his recollection of the statement; that on the occasion of the service a lady appeared in answer to his summons, who informed him that she was Mrs. Sharpe, and he identified Mrs. Sharpe in the courtroom as being in his opinion the lady upon whom such service was made at this time. Mrs. Sharpe denied ever having been served or having notice of any kind of such proceedings until they were discovered by procuring an abstract of title in contemplation of the sale of said property in February, 1916. She testified that she did not leave home on a visit during the summer of 1909, and that she and her son lived in her home together, and no other lady was ever there, except that her married daughter made her an occasional visit, but that her daughter was never at her home while she herself was off on a visit. It appears from other testimony that Mrs. Sharpe purchased this property in 1905 for consideration of $3,000, $2,500 in cash, and notes running four years for the balance. There was a nice cottage thereon at the time of the purchase, and she and her son, a young man between 25 and 30 years of age, lived in this as a home until long after the proceedings were had in the tax suit. During this time the son was working in a seed store in the city of Dallas, and paid the notes due on the property out of his earnings, and also contributed to his mother's support during such time. He and his mother were interested together in the property, and about the year 1912 the mother deeded a part of it to the son, who thereupon placed other valuable improvements thereon. Various parcels of the land were conveyed to other persons, who also built valuable improvements on the premises. All taxes due the city had been paid for each year after the purchase up to the time of the trial, and all state and county taxes were paid, except the taxes for the year 1907; such payments being regularly made in the month of January in each year before they became delinquent. It appears from the testimony of both the son and the mother that the son attended to the payment of the taxes and such matters, and both mother and son testified that they thought the state and county taxes for the year 1907 had been paid. The son testified that his mother did not tell him of the service of any papers on her; that his mother always kept her debts paid and was never sued in her life, "and if an officer had served a citation on her she would have come right down to the store to see me about it." He also testified that, after the purchase of the place in

1905, "my mother lived on this place continuously, I think, up until the year 1912, when she went to El Paso for a short while to visit her sister, again resuming her residence there when she came back. I do not remember exactly when my mother left her place again," etc. It reasonably appears that this property during this time represented the greater part, if not all, the material resources of the mother and son.

These facts suggest the corroboration of Mrs. Sharpe's testimony in these particulars: First, that she was not away on a visit in the summer of 1909, so that the conversations with some lady detailed by the deputy sheriff were not likely to have occurred; second, that it was more than probable that the mother, if she had been served with citation, would have called the matter to her son's attention, and the fact that she did not do this tends to disprove that she was served; third, that all the actions of the parties, mother and son, are inconsistent with a knowledge on their part of the existence of this suit and the proceedings which followed it.

[2] As to the first, it is the rule that the corroborating evidence must be from other sources than from the witness who requires corroboration. Gabrielsky v. State, 13 Tex. App. 428; Enc. of Evidence, vol. 3, p. 675; Wigmore on Evidence, § 2059. Had the son or daughter corroborated by their positive testimony that of the mother that she was not away on a visit during the summer of 1909, there would have been no doubt that such corroboration might have been entitled to great weight. There may be an inference from the testimony of the son, which we have quoted above, that he meant thereby that his mother was not away from home, even on a visit, during the time stated.

As to the second, the relation between the mother and son and the circumstances surrounding their living together were such as to suggest that it was highly probable, if not certain, that if the mother had been served with a citation she would have consulted her son about it. It is natural to suppose that the mother, under the circumstances stated, would have been so excited by the service of citation upon her that she would have inevitably told her son. The trial judge had the parties before him and could well judge of this matter. A New York case, Taylor v. Crowinshield, 5 N. Y. Leg. Obs. 209, to which we do not have access, is referred to by Chamberlayne on Evidence, vol. 4, § 3210, as holding that—

"On a question whether a testator alleged to have mortgaged certain property borrowed a large sum of money, his habits of living and doing business may properly be received in the absence of more primary evidence."

The footnote discloses that the evidence referred to showed that the mortgagor's financial condition was such that he was under no necessity of borrowing the money in question; that he was lending money instead of borrowing, was of retired habits, averse to business, "relying on the advice and agency of others, to whom it is established he did not apply on this occasion." Appellant relies on the case of McBride v. Kaulbach, supra, as denying any weight to this character of evidence. The facts in that case were not nearly so strong as in this. There the father was transacting his own business, and not living with the children. So that the conclusion that he would have told such children of having been served with a citation was by no means necessary, or even so highly probable as that the trial court might not have rightly concluded that such negative testimony was of such slight value as to furnish no admissible evidence of corroboration.

Third, all the surrounding facts and circumstances tend to support the conclusion that Mrs. Sharpe and her son did not know of the tax suit and subsequent proceedings had thereunder. The fact that they paid all taxes for previous and subsequent years, that they put valuable improvements on this property about the time of or after the sale, the utter disproportion in the amount of the taxes and the value of the property, with no reasonable expectation of finally ridding the property of the menace of such proceedings, without the expenditure of sums of money so largely in excess of the small amounts that would have been required to have been paid in the first stages of the proceedings—all these facts tend, we think, to corroborate the testimony of the mother and son that they knew nothing of this suit until it was discovered in the manner detailed by them.

[3, 4] Corroborating evidence is not required to be direct and positive. It may consist of facts and circumstances which tend to show that the direct evidence sought to be corroborated is worthy of credit. Wright v. State, 31 Tex. Cr. R. 354, 20 S. W. 757, 37 Am. St. Rep. 822; Creighton v. State, 61 S. W. 492; Enc. of Evidence, vol. 3, pp. 678, 679. If the independent facts and circumstances, taken all together, are, "in the opinion of both the court and the jury, strong, that is, cogent, powerful, forcible, calculated to make a deep or effectual impression upon the mind," then the direct testimony may be said to be "strongly corroborated." Hernandez v. State, 18 Tex. App. 134, 51 Am. St. Rep. 295. We think the trial court was justified in concluding that the testimony of Mrs. Sharpe that she was not served with citation was strongly corroborated.

[5] The remaining assignments may be disposed of by a general discussion of the law in connection with the facts, as already stated, and such additional statements as may be necessary. It was not necessary for the plaintiff to allege that the falsity of the return of the citation was due to any action

on the part of plaintiff in the tax suit or the defendant in this case. Kempner v. Jordan, 7 Tex. Civ. App. 275, 26 S. W. 870, writ of error denied ; Godshalk v. Martin, 200 S. W. 535; Black on Judgment, § 377.

[6, 7] This suit, we think, is to be taken as a direct attack on the judgment and the sale made thereunder. The suit was filed in the court in which said judgment was rendered. The petition recites that the suit is in the nature of a bill of review to set aside and annul the said judgment and all proceedings thereunder. These allegations are followed by a statement of the facts which plaintiff claims rendered said judgment and the sale void and by a prayer that the judgment be set aside and that the sale and deed based thereon be canceled and set aside, and the cloud upon plaintiff's title created thereby be removed. Under such allegations we cannot regard the suit as being a collateral attack on said proceedings. Moore v. Miller, 155 S. W. 579; McCampbell v. Durst, 73 Tex. 410, 11 S. W. 380; Graham v. East Texas Land & Improvement Co., 50 S. W. 579; Scanlan v. Campbell, 22 Tex. Civ. App. 505, 55 S. W. 501. And since the claim of the state has been completely paid, and the setting aside of the proceedings cannot in any manner affect it, the state is not a necessary party to the suit. Weaver v. Nugent, 72 Tex. 272, 10 S. W. 459, 13 Am. St. Rep. 792; Rowland v. Klepper, 189 S. W. 1033.

[8] The reasons that ordinarily require that one who applies to a court of equity to set aside a judgment improperly rendered by default to state in his petition that he has a good defense to the cause of action is altogether inapplicable to the facts of this case. In the cases where such rule was announced the petitioner was seeking to open up the judgment so that he might resist enforcement of the claims of the plaintiff, and courts of equity, with considerable hesitation, even in such cases (August Kern Barber Supply Co. v. Freeze, 96 Tex. 513, 74 S. W. 303), came to hold that the plaintiff ought to show that he had a good defense to the cause of action, because such allegation is necessary to show that injury and damages have resulted from the entry of such judgment. Chambers v. Gallup, 30 Tex. Civ. App. 424, 70 S. W. 1009; Foust v. Warren, 72 S. W. 405.

[9, 10] It is settled that in cases of this kind the recitals of the record showing jurisdiction may not be contradicted in a collateral proceeding. Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325. This rule is not based on any real difference in the position of the defendant, for the court is equally without jurisdiction without service, whether that appears of record or not; it is a rule of public policy, being necessary to protect the judgments of the courts from indefinite suspicion and attack under circumstances when the court is without power to adjust the equities of innocent persons relying on the verity of the recitals of the record. It is well established, however, that the defendant in such case may, within the period of statutory limitations, attack the judgment in a direct proceeding in which "the flexible powers of a court of equity * * * will adjust themselves to the very right and justice of the particular case." Crawford v. McDonald, supra; French v. Grenet, 57 Tex. 278. When the powers and processes of the court have been wrongfully or irregularly exercised in the sale of a litigant's property, and as a result of this irregularity the property has been sacrificed, there can be no doubt of the power of a court of equity to undo the wrong that has been thus committed. The questions in such cases are: Has there been any irregularity in the exercise of the powers of the court in the sale? And whether these have resulted in harm to the defendant, whose property has been sold. The answers to these questions determine whether the defendant has been wronged by the transaction. This, as we understand the principles upon which the courts act in the ordinary proceeding to set aside judicial sales, is the true purpose of the inquiry in such cases as to whether the property brought at the sale an adequate price; for if it did not, and this was caused by the irregularity, then a wrong has been done, which ought to be righted. Kauffman & Runge v. Morriss, 60 Tex. 121, 122. But it is claimed for the appellant that the rights of one who purchased at such sale without knowledge of the irregularity ought to be protected. We readily concur in this proposition; but does this protection mean that he should be allowed to take an unconscionable profit of the transaction? Hudson v. Morriss, 55 Tex. 595; Martin v. Anderson, 4 Tex. Civ. App. 111, 23 S. W. 293, second column.

"The proceedings in law will, by courts of equity, be treated as valid, though they may be erroneous, but equity will relieve against their consequences, because the rights thereby acquired cannot be retained in conscience. The purchaser will be treated as a trustee; and he will not be compelled to surrender until equity is done him." Howard v. North, 5 Tex. 316, 51 Am. Dec. 769.

[11] So the courts do not hold that a judicial sale, wrongfully or irregularly made, may not be set aside in a direct proceeding for that purpose, merely because the purchaser thereat did not know of the irregularity. Owen v. City of Navasota, 44 Tex. 522; Allen v. Pierson, 60 Tex. 604; Kendrick v. Wheeler, 85 Tex. 247, 20 S. W. 44; Kauffman & Runge v. Morriss, 60 Tex. 121, 122.

"The general rule is believed to be that a purchaser at execution sale who looks to the record and finds there was a valid subsisting judgment authorizing the execution under which the officer proceeds and who in good faith buys, pays the purchase money, and receives a deed,

takes a title which is valid until the sale is set aside. * * * If the officer has either willfully or negligently proceeded to sell in violation of instructions, and as a result the property is sacrificed, the parties are not without remedy. By motion in the court from which the execution issued, with notice to the purchaser, the sale may be, for good cause, set aside. The same end may be accomplished by an application to the equitable power of the court in which title under such a sale is set up showing good equitable grounds for relief, and of course proffering to do equity, whilst the remedies are thus ample to protect the parties to the judgment, and at the same time protect the bona fide purchaser." Owen v. City of Navasota, 44 Tex. 522.

Again:

"A court of equity, in dealing with the subject would strip it of all technicalities and go directly to the real and substantial justice of the case, and will, in decreeing that the sale be vacated, so far as substantial justice requires, restore the parties as well as may be done to their former status." Allen v. Pierson, 60 Tex. 609.

See, also, Northcraft v. Oliver, 74 Tex. 162, 11 S. W. 1122, and authorities there discussed; French v. Grenet, 57 Tex. 273; Freeman on Void Judicial Sales, § 49a; and 16 R. C. L. pp. 103, 104.

The cases we have referred to deal largely with irregularities in the process of the sale, and not in the rendition of the judgment itself. The judgment is the basis of the execution or order of sale, and if the wrong consists in the entry of the judgment, and this itself results in the wrongful sale, we see no reason why the courts would not on the same principles grant relief in such cases. In the case of Allen v. Pierson, 60 Tex. 607, it is said:

"If by reason of the failure to demand a levy, etc., appellee's land was sold without his knowledge and this failure of the officer, as a matter of fact, in any degree conduced to the inadequacy of consideration, it would entitle him to a decree vacating the sale."

It is a reasonable conclusion in this case that the want of service of citation in the suit and the failure of the plaintiff to receive any notice whatever of the proceedings and of the sale was the cause of the predicament in which the owner of the property is now placed, so that as a direct result of this wrong the appellee is about to lose her property without receiving practically anything therefor, and we cannot think that there is any rule of public policy or law that would prevent a court of equity from setting the sale aside where the purchaser may be placed in statu quo.

We have discussed this matter on general principles at this length because of the fact that there seems to be some confusion in the decisions as to the rights of the purchaser in such cases. In the case of Scanlan v. Campbell, 22 Tex. Civ. App. 505, 55 S. W. 501, decided by the Court of Civil Appeals for the Fourth District it was distinctly held in the opinion on motion for rehearing that a sale made under order of sale issued on a judgment rendered without service of process on the defendant, though the return and judgment showed service, might be set aside as to an innocent purchaser upon return of the consideration paid by him on such purchase. A writ of error was denied by the Supreme Court in such case. This holding was severely criticized by the Court of Civil Appeals for the First District in the case of Carpenter v. Anderson, 33 Tex. Civ. App. 484, 491, 77 S. W. 291, in which writ of error was also denied, and it was asserted that the contrary rule had been established by a long line of decisions. A reference to the decisions cited shows that it appears in each of them, with the exception of the case of Lawler's Heirs v. White, 27 Tex. 251, that the attack on the judgment was in a collateral, and not a direct, proceeding, and it is inferable from the opinion in the case of Lawler v. White that the court considered the attack as being collateral. The learned judge who wrote the opinion in the case of Carpenter v. Anderson, in explaining why he thought the Supreme Court denied a writ of error in the case of Scanlan v. Campbell, stated that this must have been done on the theory that the purchaser was not an innocent purchaser, since it was found that the purchase was first made by the city of Houston, the plaintiff in the suit, and the claimant under the sale bought the property from the city under "a quitclaim deed." He appears to have overlooked the opening paragraph of the opinion on motion for rehearing in said case of Scanlan v. Campbell, in which it was stated, under an authority cited:

"That the deed in question from the city to Scanlan is not a quitclaim deed. We withdraw what is said to the contrary in the opinion."

The decision in the case of Carpenter v. Anderson was not finally rested on the court's position on this matter, but on another proposition. It also appears that the plaintiff in said case did not offer to reimburse the purchaser for his payment made on acquisition of the property. In Williams v. Young, 41 Tex. Civ. App. 212, 90 S. W. 940, a decision also by the Court of Civil Appeals for the First District, the holding in the case of Carpenter v. Anderson was referred to with approval. In this case "the vendee of the purchaser at the tax sale bought the land in good faith, paying full value therefor, believing that he was getting a good title," and there was no offer on the part of plaintiff attacking the sale to do equity by repaying him. The same may be said of the facts in the case of Dean v. Dean, 165 S. W. 90. Rowland v. Klepper, 189 S.

W. 1033, is a case very similar to this, though it does not appear that the party moving to set aside the tax sale in that case offered to repay the purchaser the amount paid on the purchase, the court in the final disposition of the case requiring this to be done, however, and the Court of Civil Appeals in that case upheld the action of the trial court in setting aside the judgment and sale. A writ of error has been granted in that case, on what grounds we are not informed. It may be on the holding that the inadequacy of the consideration prevented the purchaser from being a purchaser in good faith. This proposition stated by the court in the decision may not be an accurate statement of the law, particularly in this character of case. Rogers v. Moore, 100 Tex. 220, 97 S. W. 685; Ross v. Drouilhet, 34 Tex. Civ. App. 327, 80 S. W. 241. But under our conception of the matter the good faith of the purchaser is not an insuperable objection to the setting aside of the sale, and, as we have stated, the inadequacy of price is material only in determining whether injury has been, in the particular case before the court, inflicted by the irregular exercise of the court's powers and processes. Now, if the party has knowledge of the suit and opportunity to redeem within the two years allowed by law in these cases, it may not be said that he has been wronged by the sale of the property at an inadequate price. Rogers v. Moore, 100 Tex. 220, 97 S. W. 685. But where, by the wrongful or irregular act, the defendant has been deprived of any notice whatever of the judgment and the sale until after the lapse of the two years for redemption, the wrong certainly results in the injury where the property is sold for practically no consideration. In Rogers v. Moore, 100 Tex. 220, 97 S. W. 685, a motion was made within the two-year redemption period to set aside the tax sale because the defendant had not received the notice of the sale which the sheriff had mailed him, and the property sold at an inadequate price. It was held that the statute only required the sheriff to "mail the notice," so that when this was done, the law was complied with, and there was really no irregularity in the sale, but we find this significant language in the opinion:

"As it was intended, however, that defendants should have the benefit of personal notice to give them further opportunity for protecting their interests to be affected by intended sales, it may be true that the failure to get the notice might furnish the basis for setting aside a sale, although regular, where, as, the result of the miscarriage, great and irreparable loss is threatened, and a harsh and unconscionable advantage is being taken; and if the result of the sale were to be the loss to plaintiff in error of his title to the property for the small sum paid for it, the facts would present a strong appeal for the exercise by the court of its inherent power to control its processes, and to prevent undue advantage being taken of them. But the only right acquired by the purchaser at this sale is subject to that of the plaintiff in error to redeem at any time within two years by paying double the amount of the bid, and this takes away a reason for interfering that might otherwise be sufficient."

[12] So we do not believe that our courts are finally committed to the proposition that the protection to the purchaser in good faith in this character of case requires that he be allowed to retain the property where this would result in an unconscionable profit to him at the loss of the owner. If the parties are equally innocent, certainly the equitable rule would be to place them in statu quo as nearly as possible, and we do not think public policy requires the courts to go further than this. According to the findings of the court in this case, the plaintiff not only did not receive the notice of the sale, but had no notice whatever of the suit. No opportunity for redemption was left to her, and we think good "reason for interfering" does exist, and are of the opinion that the judgment of the trial court should be affirmed.

### On Motion for Rehearing.

We have before us a copy of the notation made by the committee of judges from the Courts of Civil Appeals in granting the application for writ of error in the case of Rowland v. Klepper, 189 S. W. 1033, referred to in the opinion. This notation was as follows:

"Application granted. The Court of Civil Appeals erred in holding that the judgment could be annulled without the state being a party and without a meritorious defense."

We do not doubt that, if this proceeding had been brought to set aside the judgment before there was any sale thereunder and before it had been discharged, plaintiff could only have maintained the suit by alleging that she had a meritorious defense. The reason for this would be that, if the defendant had no defense to the suit, another trial would produce the same result, no real damage was inflicted by the rendition of the judgment without service of citation, and a court of equity will not interfere to set aside a just judgment, though it may have been irregularly secured. But when property has been sold under the judgment for a grossly inadequate consideration, and this result was due to the lack of notice by the defendant of the pendency of the suit, which she otherwise would have had had citation been served upon her as required by law, then it certainly is true that "injury and damages have resulted," and we believe that a court of equity can grant appropriate relief. It may be, as we shall hereafter state more particularly, that such relief would not require the setting aside of the judgment itself.

If any real right of the plaintiff in the judgment is to be affected by the suit to set aside the proceedings, then, of course, such plaintiff is a necessary party; for instance, if the judgment had not been fully discharged, or if the defendant, upon the setting aside thereof, could proceed against the judgment plaintiff to recover what had been received from the sale in discharge of the judgment. It is only under the latter suggestion that it could be said that the state in this case has any real interest that might be affected by this proceeding. Its claim was fully paid, and its only interest in the matter would be to prevent a claim in the future for the refund of the payments made to it. The same reason that makes it impossible for the plaintiff in this suit to make the state a party would make it impossible for her to recover from it the payments made. Besides, the plaintiff in this suit, by alleging, as a reason for not making the state a party thereto, that the claim of the state had been fully paid and tendering to the defendant the sum of money he had paid as "taxes and costs in said suit," would probably be estopped from hereafter asserting any such claim. So that, as a practical matter, the interest of the state is so remote that under the particular circumstances it might well be held that it is not a necessary party.

[13] We are inclined to think, however, that the proper judgment in cases of this kind would be merely to set aside the sale, leaving the judgment itself undisturbed. Such action would afford all the relief necessary and would eliminate any question as to the necessity of alleging a meritorious defense to the judgment and of making the state a party to the proceeding. In the case of Weaver v. Nugent, 72 Tex. 277, 10 S. W. 459, 13 Am. St. Rep. 792, where the suit was to set aside an execution sale under judgment in which the state was plaintiff, it was said:

"The tender of the purchase money obviates the necessity of the presence as a party of the state, the nominal plaintiff in execution. This is in accordance with the decision in Miller v. Koertge, 70 Tex. 162, 7 S. W. 691 [8 Am. St. Rep. 587]."

In the said case of Miller v. Koertge, which was also a suit to set aside the sale in a case in which the state was a party, it was said:

"The plaintiffs in this suit tender the bid to the purchaser, and this may relieve them of the necessity of making the state a party."

If a court of equity has the power to set aside a sale because of some irregularity in the manner of conducting it or in issuing the process, we can see no reason why, if the judgment itself was obtained without no-tice, and this resulted in a sale of property for an inadequate price, the court may not for this reason set aside the sale, though it may, if the equities of the case demand it, leave the judgment itself undisturbed.

While it was recited in the preface to the judgment in this case that the plaintiff was entitled to a decree annulling the judgment, the judgment as actually rendered only sets aside the sale and conveyance of the premises to the defendant. If the judgment did improperly set aside the former tax judgment, we do not think the defendant in this case is in any position to complain of such matter as that portion of the judgment does not injuriously affect him. However, we will modify the judgment heretofore rendered so as to only annul the sale itself and the sheriff's deed made to the defendant thereunder, and the motion for rehearing will be overruled.