### WRIGHT v. AUSTIN.

No. 14563.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 29, 1943.

Rehearing Denied Nov. 26, 1943.

Paul T. McMahon, of Dallas, for appellant.

Leake, Henry, Young & Golden, of Dallas, for appellee.

SPEER, Justice.

This is a suit in equity in form of a Bill of Review instituted by H. S. Austin against G. G. Wright, to set aside a judgment theretofore rendered in favor of Wright against Austin, and to be permitted to present his defenses against the action brought and prosecuted to judgment by Wright.

The judgment sought to be set aside was styled G. G. Wright v. H. S. Austin, No. 54391–F, and in this opinion we will refer to that case by the number indicated, and to the parties by name. In the instant case we will refer to the parties as plaintiff and defendant, as they were designated in the trial court.

The record before us reflects that for many years G. G. Wright was the owner of a building in the City of Dallas commonly

known as the Circle Theater. By a written contract Wright leased to H. S. Austin, the plaintiff in this bill of review action, a portion of said building, beginning November 1, 1930, and terminating October 31, 1935. Shortly before the expiration of that lease and a supplementary one for more space, Wright and Austin entered into another written lease contract on November 1, 1935, terminating on October 31, 1940, covering designated parts of the ground floor and two rooms on the second floor of the building. The agreed price for rental was a lump sum payable in monthly installments of $130 each. Austin paid all rentals under the contract up to and including February of 1939, at which time he moved out of the building for reasons set out in his petition for review.

On December 13, 1940, Wright filed suit against Austin in a district court of Dallas County for the amount of rentals unpaid under the lease contract, and caused citation to issue therein to Austin, alleging that the remainder unpaid on the lease contract was $2,651.85, with interest on each unpaid installment.

On January 14, 1941, a judgment was entered in favor of Wright against Austin, reciting service of citation on Austin, but that he failed to appear and wholly made default, with a finding that plaintiff's cause of action was liquidated and a writ of inquiry was at that time awarded by the court. On January 17th, another order was entered, reciting the former one, and that the court then heard the testimony to ascertain the amount of Wright's damages, and entered judgment against Austin for $2,800, with six per cent interest thereon from its date.

As grounds for vacating the judgment in cause No. 54391–F, plaintiff alleged that he was not served with citation and that he did not waive such service, nor answer therein; that he had no knowledge of the existence of a judgment against him until on about April 2, 1941, and that he was diligent thereafter in filing this suit to set aside the judgment.

Plaintiff alleged in detail what he termed meritorious defenses to any right of action Wright may have claimed against him when he instituted and prosecuted cause No. 54391–F. These alleged defenses consisted of detailed acts of Wright and his agents and employees, which harassed, annoyed and embarrassed Austin to such an extent that he could no longer occupy the leased premises and conduct his business therein. The sufficiency of such pleadings and the testimony offered in support thereof are not attacked in this appeal and need not be set out here. The special issues submitted and answered will sufficiently indicate plaintiff's theory.

Further allegations were made that a full accord and satisfaction of the unexpired part of his lease contract was made with defendant, acting through his agent and manager, Miss Miller. In this connection it was averred that one Livingston desired to lease the whole building from defendant, and it was agreed between plaintiff and Miss Miller, the managing agent, that if plaintiff would do certain repairing on the premises previously occupied by him, satisfactory to Livingston, plaintiff would be released from further performance of his lease contract; that said repairs were made by plaintiff and Livingston accepted them, and that plaintiff then and thereafter refused further to pay the monthly rentals of $130 per month.

It is alleged by plaintiff that if he had been served with citation in said cause No. 54391–F, he could and would have promptly pleaded his said defenses and presented evidence thereof at a trial. That he had not been negligent in presenting said petition for review, enumerating the dates upon which he first knew of the judgment against him.

Defendant's answer was like the plaintiff's petition, lengthy, and it may be said that pleadings in such actions as this are necessarily of considerable length. There were 15 special exceptions in the answer and meticulous denials of all of plaintiff's allegations of fact concerning his asserted meritorious defenses. The citation and the officer's return thereon were pleaded; the citation was regular in every respect and showed by the return to have been served on plaintiff at a specified day, hour and place, duly signed by the officer who is alleged to have served it.

Defendant pleaded in the alternative the rental contract, its breach by plaintiff, the amount unpaid and sought, by way of cross-action, recovery for the unpaid balance of the rental contract.

Trial was to a jury. At the conclusion of taking testimony, defendant moved the court for an instructed verdict; the grounds therein, applicable to the question before us, are substantially that because the

citation in evidence was regular and the officer's return in cause No. 54391–F was plain, unambiguous and showed positive service of the process on plaintiff, and there being no impeaching testimony to the contrary, and because, even though its truth was denied by plaintiff, his testimony was not corroborated, as required by law, the court should instruct the jury to return a verdict for defendant. The motion was by the court overruled.

Special issues were submitted to the jury. The charge of the court carried this explanation: "You are further instructed that the officer's return on a citation, showing service, may not be impeached or overcome by the testimony of one witness, unless strongly corroborated by other evidence. Such corroborating evidence must come from other sources than the witness whose testimony requires corroboration."

Special Issue No. 1 reads: "Was H. S. Austin served with citation in cause No. 54391–F, styled G. G. Wright versus H. S. Austin? If you find from a preponderance of the evidence that H. S. Austin was not served with citation you will answer this issue 'no'. Otherwise you will answer it 'yes'. The jury answered 'No'."

By answering other propounded special issues, the jury found (a) the conduct of G. G. Wright and his agents was such as to materially and permanently interfere with the beneficial use of the premises occupied by H. S. Austin; (b) the removal by Austin from said premises was caused by the conduct of Wright, his agents and employees; (c) Miss Miller agreed with Austin that he would be released from the contract if he put the premises in a condition satisfactory to Mr. Livingston; and (d) Austin did put the premises in a condition satisfactory to Livingston.

After the verdict was received, defendant duly moved to disregard the special jury findings and to enter judgment non obstante veredicto. This motion was overruled and plaintiff's motion for judgment on the verdict was sustained and judgment was entered vacating the judgment in cause No. 54391–F, and in favor of plaintiff and against defendant on the merits. Recovery by defendant on his cross-action was likewise denied.

Motion for new trial was overruled and appeal perfected by defendant G. G. Wright.

The only points of error relied upon for reversal are: (1) Error of the court in refusing to give defendant's requested peremptory instruction and (2) error in refusing to sustain defendant's motion for judgment notwithstanding the verdict. It is not contended by defendant that plaintiff did not plead and prove a meritorious defense to cause No. 54391–F, if that judgment should be set aside because of a lack of service of citation on Austin in that case.

The sole question for our determination is: Should the trial court have instructed a verdict for defendant, or, having declined to do so, should it have sustained his motion for judgment non obstante veredicto?

The citation purportedly served on H. S. Austin, the defendant in cause No. 54391–F, together with its return by the sheriff, was in evidence. The citation and return are in regular form, except that it shows the return had been altered so as to show that the mileage traveled in making service was different from what was originally indicated.

Plaintiff Austin emphatically denied that he was ever served with the citation, as indicated by the return; while the officer who served it as positively testified to the service and recalled the incident quite clearly. The testimony of plaintiff alone was not sufficient to impeach the return as shown by the citation.

"It is now settled that to impeach such a return [of citation], the testimony of one witness is not sufficient, that his testimony [of one witness] must be strongly corroborated, and that the proof must be clear and satisfactory." Johnson et al. v. Cole et al., Tex.Civ.App., 138 S.W.2d 910, 912, writ refused. Many cases are cited by that court in support of the rule announced.

The real controversy in the instant case is, can it be said that plaintiff's testimony, in which he denied service, is strongly corroborated from sources other than from himself?

Certainly the words "strongly corroborated" mean a degree of corroboration exceeding what might be in ordinary terms called corroboration by any testimony of probative value. It is equally true that the word "strong", which denotes strength, is susceptible to degrees of comparison; language may be "strong", yet other expres-

sions may be stronger; and other language may be the strongest of all. Then, we may ask how strong should the corroboration be to support an impeachment of the officer's return? The Johnson-Cole case, supra, indicates that its strength must be "clear and satisfactory". We may then ask to whom shall it be "clear and satisfactory"? The last inquiry is answered in part by what is said in Harrison v. Sharpe, Tex.Civ.App., 210 S.W. 731, 733, writ refused. In that case, on this point it was said: "If the independent facts and circumstances, taken all together, are, *'in the opinion of both the court and the jury, strong, that is, cogent, powerful, forcible, calculated to make a deep or effectual impression upon the mind,'* then the direct testimony may be said to be 'strongly corroborated.'" The inside quotation emphasized by us was taken from a criminal case, wherein the sufficiency of testimony to convict for the offense of perjury was under consideration; however, the Supreme Court gave its sanction by refusing a writ of error. It follows, then, that the corroborating circumstances must be "clear and convincing" to both the *court and jury.* The last cited case has been followed several times and has had approval of the Supreme Court. With the rather rigid test laid down in that case, let us look to the facts involved and the disposition made of them in that case. The officer who claims to have served the citation said he went to Mrs. Sharpe's home several times to make the service, and a young woman at the house said Mrs. Sharpe was away on a visit "up North". That later he called and a lady who said she was Mrs. Sharpe met him at the door and he delivered the process to her; he identified Mrs. Sharpe in the court room as the one to whom he believed he delivered the citation. Mrs. Sharpe denied having received the citation. She said she did not leave home on a visit that summer. The suit involved a rather small sum for taxes for one year. The corroboration of Mrs. Sharpe's denial of service consisted of the testimony of her son, who testified in effect that he and his mother lived together in the property; that he was around 25 years of age; that his mother had kept her debts paid; they thought all taxes had been paid; that his mother was never sued in her life, and "if an officer had served a citation on her she would have come right down to the store (where witness worked) to see me about it". He said his mother lived on the place since 1905 to 1912, when she went to El Paso for a short while and returned to the property. That trial was to the court without a jury, and the court found as a fact that Mrs. Sharpe was not served with citation in the tax suit. On these findings the court set aside the judgment in the tax suit and entered judgment for Mrs. Sharpe, the plaintiff in the bill of review case. After an exhaustive review of the authorities by the Court of Civil Appeals, the judgment was affirmed and the writ of error refused by the Supreme Court. Some of the cases which lay down the same general rule as that stated in the cases already cited are: Godshalk v. Martin, Tex.Civ.App., 200 S.W. 535; Crawford v. Gibson, Tex.Civ.App., 203 S.W. 375, writ refused; McBride v. Kaulbach, Tex.Civ.App., 207 S.W. 576, writ refused; Wedgeworth v. Pope, Tex.Civ. App., 12 S.W.2d 1045, writ refused.

As stated above, in the instant case we have the citation and its return showing service on plaintiff in cause No. 54391–F, followed by the testimony of the officer who made the return, verifying the correctness of his reported official acts. The officer also testified that he procured from the sheriff's office the original citation and the copy thereof containing a certified copy of plaintiff G. G. Wright's petition in cause No. 54391–F, along with a subpoena for Austin to appear before a notary public and answer depositions; that he went immediately to the Criminal County Court room and approached Mr. Austin near the middle of the court room and delivered to him the copy of the citation and the subpoena; that Austin was standing talking to attorney Bert Barr; he said Austin asked him where the notary public's office was located and he told him. Witness said he knew Mr. Barr was then in the military service; he didn't know Barr was not in Dallas. Witness was told that another deputy had previously had the papers he was to serve. Witness made the return on the citation and said it was correct. On cross-examination the witness examined the return and admitted that the mileage notation had been changed from either 14 miles or 4 miles to 10 miles traveled in the service of the process; he said he didn't know whether the other deputy who had previously had the paper had attempted to serve it or not.

Plaintiff testified that he never was served with the citation at any time. That

on the date shown by the return on the citation, the deputy sheriff did hand him a subpoena to answer depositions before a notary public; that he was in the Criminal County court room to testify as a witness in a civil case then on trial; that he testified for a very brief time and went immediately to the notary public's office and answered the depositions. That the subpoena was a single folded paper and had a one dollar bill clipped to it and folded on the inside. Upon having the subpoena exhibited to him he said that was the only paper served on him by the officer at that or any other time.

X. R. Gill testified that he was a party to the suit being tried in the county court room and used plaintiff Austin as a witness. Austin was ill that day and he was anxious to have him present. Austin was summoned to appear at 2:00 o'clock and Gill was sitting near the judge's stand watching for Austin to come in; he saw Austin enter the court room and as he came around the side of the court room near the east wall he saw some man, whom he didn't know, approach Austin; the man whom he did not know reached "in his pocket and pulled out a sheath of papers and handed him (Austin) one." On cross-examination Gill said he was not interested in anything that Austin or the other man did in particular; the man that stopped Austin did not detain him only long enough to hand him a paper. Question: "While ago you said 'a paper'. Do you know whether or not there was more than one paper?" Answer: "No". On redirect examination, the witness was handed the subpoena and when he examined it he said Austin was handed a paper similar to that, he didn't know whether it was that paper or not.

In Panhandle Construction Co. v. Casey, Tex.Civ.App., 66 S.W.2d 705, 707, writ refused, there was a denial by a party of service in contradiction to the officer's return showing service. The court recognized the rule that her testimony alone was not sufficient unless strongly corroborated. The facts revealed that citation was issued in a county "hundreds of miles away" from the officer whose return showed he received it on the date of its issuance, and the return also showed mileage traveled in service to be ten miles, while the party's home was only two miles away. On the point, court said: "The facts and circumstances adduced in connection with the purported service of this citation were such, in our opinion, as tend strongly to support the claim of appellee that she was never in fact served and appear to us to sufficiently meet the test laid down above." The judgment below was reversed on motion for rehearing, because of a lack of proper parties.

We think the corroborating facts and circumstances in the instant case were even stronger and more convincing than those held to be sufficient in both the Harrison v. Sharpe, Tex.Civ.App., 210 S.W. 731, and Panhandle Construction Co. v. Casey, Tex.Civ.App., 66 S.W.2d 705, cases, supra. In each of those cases a writ of error was refused.

It will be observed that the officer who made the return in the instant case admitted an unexplained error in the mileage on the return, said by him to be correct. In the Casey case, supra, a similar situation was said by the court to strongly tend to corroborate plaintiff's contention that he was not served. Then, too, the witness Gill contradicted the alleged serving officer as to the location in the court room where the officer claimed he accosted Austin when he served him.

As held in the Harrison-Sharpe case, supra, the trial court had all the parties before him and observed their demeanor and could well judge the matters in question. Obviously the trial court believed the facts and circumstances were sufficiently strong to warrant their submission to the jury, because this was done. Likewise, the jury verdict indicates that it, too, believed the denial of service by plaintiff was strongly corroborated by the testimony before it. This was made the test in the case last cited.

In view of these matters and the authorities cited, the trial court properly refused the requested peremptory instruction and the motion for judgment notwithstanding the verdict. The assigned errors are overruled and the judgment entered will be affirmed. It is so ordered.

Affirmed.