## HARRIS VS. KING.

A vendor of real estate receives payment of the purchase money, executes a bond to the vendee for title, and either remains in possession, or after delivery of possession to the vendee, is constituted his agent in respect to the land: he holds the naked legal title in trust for the vendee, and the statute of limitations is no bar to an action for a specific performance of the contract, after ten years from the time of its execution, if the vendor has done no act inconsistent with the vendee's title.

A purchaser of the vendor's interest in such real estate, at a sale by his administrators after his death, with a knowledge of the vendee's purchase, stands in the same situation as the vendor would if contesting the title of his vendee.

*Appeal from the Circuit Court of Randolph County in Chancery.*

Hon. BEAUFORT H. NEELY, Circuit Judge.

FAIRCHILD, for the appellant. To entitle a party to a decree for specific performance, all the material facts must be clearly proven. A stronger case must be made to establish a right to a decree than will be sufficient to resist the claim of specific performance. 2 *Story's Eq.,* sec. 693, 742, 769 ; 12 *Ark.* 551, 552.

The complainant was barred from recovery by lapse of time.

The complainant's action was barred by the statute of limitations.

King, by bidding at the sale, is estopped from setting up any title in opposition to it, or paramount thereto.

Mr. Justice WALKER delivered the opinion of the Court.

Thomas O. Marr, a resident of the town of Pocahontas, Arkansas, sold to Samuel King, a citizen of the State of Missouri, two lots of land, situate in said town ; and, thereupon, executed to King a penal

bond, in the sum of four hundred dollars, conditioned (after reciting the contract) to be void, if he, the said Marr, should make, or cause to be made, a good and sufficient title to the lots of land to said King. The bond bears date the 13th of March, 1841, and it does not appear, from the recitals in it, what the price, agreed upon for the lots, was, or whether paid or not. In the year 1849, Marr died intestate, and administration upon his estate was granted to John H. Imboden, and John P. Black, who, in obedience to an order of the Probate Court, on the 13th of May, 1851, offered said lots of land for sale to the highest bidder, and they were sold to the defendant, Henderson H. Harris, to whom they conveyed the right, title, and interest, of their intestate in said lots.

On the 11th of June, 1851, King filed his bill in chancery, setting forth the bond, and averring the payment of the whole of the purchase money, at the time it was executed. He claims title to the lots under his purchase from Marr, and charges that he expressly notified both the administrators and Harris, the purchaser, before and at the time the lots were sold, that they were his.

It is also alleged, that, at the time he made the purchase of the lots, they were delivered up to him, and that he constituted Marr, his agent, to rent the lots, (there being a small building upon one of them) and to pay the taxes.

The relief sought, is, that the sale to Harris may be set aside, his deed canceled, and that a title be decreed to him in accordance with the conditions of his bond.

The defendant Harris, who is alone contesting with the complainant for title, in his answer, admits that he purchased after notice of the claim of the complainant; but was encouraged to bid for the property by the after conduct of plaintiff, who was a bidder at the sale, and run the property up on him to near the amount bid by him for it. He denies all of the other allegations, and requires proof, and expressly relies upon the statute bar of limitation of ten years.

The bond was exhibited, and its execution proven, and a wit-

ness was called at the trial, who stated that he had heard Marr say that he was acting as agent for King, and paid taxes for him on town property, in Pocahontas, but did not learn what property it was, which, together with the bond, was the whole of the evidence.

This brief history of the case will suffice to present fairly the only question of law presented in the case, which is, whether the right of action was, or not, barred by limitation.

The suit was brought for a specific performance of a contract, which had been executed more than ten years before the suit was commenced, and as there was, by the terms of the contract, no money to be paid. nor any precedent duty on the part of King to be performed before a deed from Marr was to be made, King's right of action to enforce a specific performance, was perfect from the date of the contract; and was, therefore, clearly barred by limitation, unless from the relative position of the parties and the nature of the contract, it is excepted out of the general rule, that courts of equity act in analogy to courts of law, in applying the statute bar to proceedings in equity, so that if the party had lost his remedy by a legal bar, he can have no remedy in equity upon the same cause of action.

One of the exceptions to this rule arises upon a distinction taken between cases which are exclusively within the jurisdiction of courts of equity, and such as over which the courts of law and equity have concurrent jurisdiction, leaving the former to depend upon the nature of the equity, as for instance, whether there is a trust involved in the issue, whilst in cases of concurrent jurisdiction, the same statute bar, applicable to the case, if brought at law, will be applied in bar to the remedy in a suit in equity. See *Kane vs. Bloodgood,* 7 *John. Ch. R.* 114.

And with regard to trusts, it would seem to be the settled doctrine, that the statute of limitation may be pleaded to implied trusts, but as regards express trusts, whilst the general rule would seem to be, that the statute bar could not be pleaded as to them, still, there seems to be a well founded distinction as to them.

In cases of continuing direct trusts, so long as the trustee continues to act under the trust, and the *cestui que trust* to recognize or sanction such acts, there would seem to be no limitation, because the acts done under the trust, are so many renewed and repeated acknowledgments of its existence, and of the rights under the trust. This is in analogy to the saving clause of the statute, which makes part payment, or a new promise sufficient evidence to repel the presumption of payment by the lapse of time, and to fix a new point from which the statute bar will begin to run. Chancellor Kent, in *Kane vs. Bloodgood*, said: "It does not bar, so long as the trust is a continuing and an acknowledged trust," and in *Raymond vs. Simonson*, 4 *Blackf.* 81, the court said : "So long as such a trust as that, (referring to direct continuing trusts,) is continuing as a trust, acknowledged or acted upon by the parties, the statute cannot apply. But so soon as the trustee denies the right of his *cestui que trust* and his possession becomes adverse, lapse of time from that period, may constitute a bar in equity."

Upon the same principle, it is held, that although the statute bar of twenty years may be pleaded to a bill to redeem a mortgage, yet still if within that time the mortgagee treat it as a mortgage, the statute bar is removed. *Story Eq. Pl., sec.* 757.

But with this and one other exception, to which we will presently refer, in cases of direct and continuing trusts where the trustee ceases to act, or has done no act, after the acceptance of the trust, to indicate the character or right in which he holds, if the equitable title is not sued upon until after the time within which a legal title of the same nature ought to be sued upon, to prevent a bar by the statute of limitations, courts of equity, acting by analogy to the statute, will not entertain it. *Story Eq. Pl., sec.* 757 ; *Moore & Cail vs. Anders*, 14 *Ark.* 640.

But with regard to trusts of this nature, there is one class of cases, which, from their nature, seem to have been excepted out of the rule, and against which the statute bar does not attach. It is the case of a trustee, who holds possession of an estate, where

such possession is not inconsistent with the title of the claimant.
Lord REDESDALE, in *Hovensden vs. Lord Annesley*, 2 *Sch. & Lef.*
607, held: "That if the trustee is in possession of an estate, and
does not execute his trust, the possession of the trustee is the pos-
session of the *cestui que trust*, and if the only circumstance be
that he does not perform his trust, his possession operates nothing
as a bar, because his possession is according to his title. As in
the case of a lessee for years, though he does not pay rent for 59
years, his possession is no bar to an ejectment, after the expira-
tion of the term, because his possession is according to the right
of the party against whom he seeks to set it up;" and this case is
cited with approbation by Judge KENT, in *Kane vs. Bloodgood.*
Such, also, was the decision in *Raymond vs. Simonson*, 4 *Blackf.* 82.
And in *Graham's heirs vs. Nelson's heirs*, 5 *Humph.* 611, where
the question arose upon a covenant for title, as in this case, the
court said: Nelson's claim was not adverse to, but consistent
with, the right of the complainants. "He had sold the entry 1121
to them, and in considering the right to the land in the present
controversy, as being derived from that entry, he must be consi-
dered as their vendor of this land. The rule is, that after a sale,
and before the conveyance of a legal title, the vendor is a trustee
for the vendee, and whilst his possession can be reasonably sup-
posed to be in accordance with the trust, it will be construed for
the benefit of the *cestui que trust*, and the act of limitations will not
operate. "

We have thus briefly reviewed this interesting question, that
we might show the distinct ground upon which (we apprehend),
from the facts of the case before us, it must be decided.

The legal effect of the bond, conditioned to make a deed for
the lots, as held by this court in *Smith vs. Robinson*, 13 *Ark.*
533, and *Moore & Cail vs. Anders*, 14 *Ark.* 634, imported a pre-
sent sale which passed the ownership and beneficial interest in
the land to the purchaser, and this court has repeatedly held,
that the vendor held only the naked legal title in trust for the
benefit of the vendee. In the case of *Walton vs. Coulter*, 1 *Mc-*

*Lean R.* 132, where a bond for title was executed, and the vendee had entered upon the land after the lapse of more than forty years, it was held, that the statute bar did not prevent a recovery. The court, in that case, expressly recognized the relation of trustee and *cestui que trust,* and said : "When the relation of trustee and *cestui que trust* exists on the death of the trustee, nothing but the legal estate descends to the heir. The equity is with the vendee, he has paid the consideration, and may be in the possession of the premises; would it not then be a most extraordinary rule that would bar the equitable claimant from obtaining the legal right—a right divested of all equity ? Such a right is not within the mischiefs, against which the statute of limitations is designed to guard."

According to these authorities, Marr was a mere trustee, and held the legal title as such. It is not pretended that he asserted any title to the property after his sale to King. And it was altogether consistent with King's purchase, that he should at once have taken possession of the property, which, it appears, was not at the time tenanted. The bill expressly charges that the lots were delivered to King, at the time they were purchased, and that being a non-resident of the State, he made Marr his agent, to take care of the lots, and pay taxes upon them; and although this allegation is not admitted by Harris, the purchaser, the fact is of such a nature that he could not be presumed to know any thing of it, and is clearly within the rule that requires less strictness of proof to overturn it, than when the defendant answers touching a matter in regard to which he is presumed to be informed. The evidence of the only witness who was called, was, that Marr had admitted that he was the agent for King, and paid taxes for him on lots in Pocahontas. Taking the whole of the facts together, the residence of Marr at Pacahontas, where the lots were situated, the non-residence of King, and the nature of the answer and evidence, we incline to believe the evidence sufficient to establish an agency, and when that is the case, even if it had been shown that Marr did exercise acts of ownership over

the property, it is fair to presume that it was in his character as agent.

Under the circumstances of the case, as long as Marr did no act evidencing a claim or title adverse to King's, whether he held it as agent, after delivering it up to King, or retained the possession with the mere naked title in trust for King, we are of opinion, that the right of King to enforce a specific execution of the contract for a deed for the land, was not barred by limitation, even though more than ten years had elapsed between the execution of the bond and the commencement of the suit.

The administrators expressly declared, and gave notice, that they only sold such interest as Marr had, and Harris with a full knowledge of King's purchase, bought the interest of Marr ; he, therefore, stands in no better situation than Marr himself would, if alive, and defending against the claim of King.

Entertaining these views, it follows, that the decree of the Circuit Court was correct, and should be, in all things, affirmed.