MILLMAN LUMBER COMPANY *v.* BRYANT.

4-8493

209 S. W. 2d 878

Opinion delivered April 12, 1948.

*Owens, Ehrman & McHaney,* for appellant.

*John Shouse, Merle Shouse* and *J. Loyd Shouse,* for appellee.

HOLT, J. This action was begun January 6, 1947, and involved title to the timber on 631 acres of land in Baxter county, Arkansas.

November 22, 1945, J. J. English, the owner, conveyed by deed the timber on this land to appellant, R. H. Millman, for a cash consideration of $2,000, giving a period of three years within which to cut and remove the timber. This timber deed was not filed for record until August 30, 1946, and in the meantime, on July 23, 1946, English conveyed this tract without reference to reservation of the timber, by warranty deed, to appellee, Clyde

Bryant, and this latter deed was filed for record on the same day that it was executed.

Late in 1946, appellant, Millman, entered upon the land and cut a small amount of the timber, whereupon appellees, by appropriate proceedings, sought injunctive relief and damages against appellant on the ground that Bryant was an innocent purchaser and had no notice when he purchased the tract of land from English of the prior sale of the timber by English to appellant, Millman.

Upon a hearing, the trial court enjoined appellant from cutting and removing any of the timber except approximately 20 acres (described in the decree), and denied appellee damages for the timber so cut and removed. This appeal followed.

Appellees have cross-appealed from that part of the decree denying damages for the portion of the timber cut by appellant. Appellant says that the question presented here is "whether the appellee, Clyde Bryant, is a *bona fide* innocent purchaser for value of the lands involved in this action and the timber growing thereon without notice of the title of the appellant, R. H. Millman, in and to said timber."

Appellee states the question: "Was the conduct of appellee that of a prudent man under the circumstances existing? . . . If appellee's conduct was that of an ordinarily prudent person and if he pursued his inquiry with ordinary diligence under the circumstances obtaining, he is an innocent purchaser. If he failed to do so, he is charged with the full knowledge of all facts which reasonable inquiry would have disclosed."

It is undisputed that J. J. English, the owner of the 631 acres of timber land involved, conveyed by deed the timber on this tract to R. H. Millman for a consideration of $2,000, cash, on November 22, 1945, and that this deed was not recorded until August 30, 1946. It is further undisputed that English, by warranty deed, without exception or reservation of the timber growing on the tract, conveyed it to appellee, Clyde Bryant, on July 23, 1946. While negotiations were being carried on between

English and Bryant for the sale of the land, according to the stipulated testimony of English, he (English) told Bryant that "in the beginning of negotiations with plaintiff (Bryant) for the sale of the lands herein involved he fully informed plaintiff of all the facts in connection with the sale of the timber on the lands herein involved and that plaintiff had knowledge of such facts at the time they finally agreed upon the terms of the sale; that English told the plaintiff he had sold all the timber and had executed a timber deed therefor and that plaintiff had knowledge of all these facts when he agreed with English upon the purchase price of said lands and finally consummated the sale."

Bryant denied that English told him that there was an outstanding timber deed to the entire tract, but admitted that English, during the negotiations for the purchase of the land, told him that the timber on about 25 or 30 acres of the tract had been sold, but did not remember to whom the sale was made. He further testified that he caused a search of the records to be made and found no timber deed on record, that he had Mr. Curlee make this record search for him "that morning before the deed was made" and that he relied upon this information.

Mr. Curlee, who brought English and Bryant together, testified: "Q. (By Mr. Owens) Mr. Bryant says that he asked you to. go over to the courthouse and see if you could find a timber deed on record? A. That's right. Q. And you were unable to locate one? A. There was not any there that I could find at that time. Q. Then the deal was closed, as a matter of fact, on the strength of the record? A. I would say that and on the strength of what Mr. English had told him. . . . Q. I will ask you to state whether or not Mr. Curlee, that in that conference, Mr. English stated in the presence of Bryant and Ernie Wright, that he had told him prior to that deal being closed, that he had sold the timber? A. That's correct, but I am not saying he said he sold all the timber, but the timber we were talking about. . . . Q. (By Mr. Shouse) . . . There wasn't anything said in your presence about all the timber, was there? A. No, sir.

Q. You understood and in fact, you knew all the while that Mr. English had informed Mr. Bryant of the sale of a part of the timber? A. That's correct. . . . A. To tell you the truth, I wasn't interested in the sale because I just simply brought them together. I never was with him on the place, in fact I took Clyde down there and introduced them and went back when they closed the deal and took this fellow's acknowledgment." We do not detail all the testimony.

The cause comes to us for trial *de novo*.

We recognize the well established rule that, on a disputed question of fact in an equity cause, the findings of the Chancellor should not be disturbed unless they are found to be against the preponderance of the testimony, but in the present case, we have reached the conclusion, after a careful consideration of all the testimony, that it preponderates against the Chancellor's findings.

The principles of law announced in *Cooksey* v, *Hartzell*, 120 Ark. 313, 179 S. W. 506, are controlling here. In that case, the facts, in effect, were quite similar to the present case. There, the owner of the land involved testified positively that the day before he sold the land to the appellee (Hartzell) he told Hartzell the timber on the land had been previously sold. Hartzell denied that the vendor had made any such statement, but admitted that the vendor had told him that the timber on 3 acres of the land had been sold. There, as here, the timber deed was not recorded until after the vendor of the timber had executed a warranty deed conveying the entire tract, without reservation of the timber. There, the appellee admitted that he knew there was an outstanding timber deed to 3 acres out of a quarter section involved, and in the present case, appellee admitted that he knew there was an outstanding timber deed to 25 or 30 acres of the 631-acre tract involved. It was there said: "In other words, he was put upon notice of appellant's ownership, and even though the deed was unrecorded, his grantor's prior conveyance to appellants must prevail over his subsequent purchase. The timber deed, even though unrecorded, was good between the parties and against subsequent purchasers with notice."

In the very recent case of *Thackston* v. *Farm Bureau Lumber Corporation,* 212 Ark. 47, 204 S. W. 2d 897, we reaffirmed our holding in *Broderick* v. *McRae Box Company,* 138 Ark. 215, 210 S. W. 935, and said: "Prior to the execution of the deed to the land from Hall to Broderick, Hall, by a written contract, sold and conveyed the timber to a third person. According to the testimony introduced for the defendants, McRae Box Company and Hale, Broderick was informed by his vendor before the execution of the deed by the latter to the former that the timber had been sold. This was actual notice to Broderick and put him on inquiry as to the rights of the parties who had purchased the timber. *Kendall* v. *J. I. Porter Lumber Company,* 69 Ark. 442, 64 S. W. 220; *Collins* v. *Bluff City Lumber Co.,* 86 Ark. 202, 110 S. W. 806; and *Weaver-Dowdy Co.* v. *Martin,* 94 Ark. 503, 127 S. W. 705. It is true that Broderick denied that Hall told him that he had sold the timber at the time he made the contract with him for the sale of the land; but the testimony as to notice need only be established by a preponderance of the evidence."

In *Kendall* v. *J. I. Porter Lumber Company, supra,* we find this language: "Appellant was also informed by his vendor that the J. I. Porter Lumber Company had purchased the timber. This did actually put him on inquiry, and he searched the records for a deed from William Godfrey to the Lumber Company. Failing to find such a deed, he purchased the timber. He did not, however, prosecute the inquiry with due diligence. There was one other source of information open to him, and that was an application to the appellee. He failed to make it, and is therefore chargeable with notice of the contents of Godfrey's deed to the Lumber Company. The undisputed facts show that he had actual notice."

The general rule is announced in *Devlin on Real Estate,* "Deeds," Third Edition, Vol. 2, page 1342, § 725, as follows: "It is a well-settled rule, both in England and in this country, that subsequent purchasers who have notice of a prior unrecorded deed, acquire their rights in subordination to it. They are affected by their knowl-

edge of its existence in the same mode, and to the same extent, as if the deed had, prior to their purchase, been properly recorded. Whatever is notice enough to excite attention and put a party on guard and call for inquiry is notice of everything to which such inquiry might lead. When a person has sufficient information to lead him to a fact he shall be deemed conversant of it.''

So here, we think it clear that appellee on the un-disputed facts had actual notice of an outstanding tim-ber deed, and in the circumstances, cannot be heard to say that he was without such notice.

Accordingly, on the direct appeal, the decree is re-versed and the cause remanded with directions to enter a decree consistent with this opinion. On the cross-appeal, the decree is affirmed.