J. W. WOODS *v.* Dr. William K. WRIGHT

5-6173                                                    493 S.W. 2d 129

Opinion delivered April 23, 1973

298

*House, Holmes & Jewell,* by: *Robert L. Robinson Jr.,* and *John B. Driver,* for appellant.

*Hall, Tucker & Lovell,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant contends there was error in a decree requiring him to specifically perform a contract for the sale of an undivided two-thirds interest in a 400-acre tract of land in Searcy County to Dr. William K. Wright. Appellant himself was a purchaser from J. A. Gates and Doris M. Gates, his wife. We find no reversible error on any of the four points relied upon by appellant, viz:

> I. Appellant is a bona fide purchaser for value, and his equity in the 400 acres is superior to that of appellee, Wright, who should be restricted to his remedy of rescission and recovery of his purchase price from appellee, Gates.

II. The appellee, Doris M. Gates, never signed the contract of sale, and the equity acquired by the appellee, Wright, under the contract of sale is subordinate to that of Doris M. Gates, who was a tenant by the entirety with Wright's vendor.

III. The appellee, J. A. Gates, was acting as agent for the appellee, Wright, when he sold the 400 acres in dispute to the appellant, Woods.

IV. The complaint-at-law filed by the appellee, Wright, is barred by the statute of limitations found in Ark. Stat. § 37-209.

On May 11, 1966, J. A. Gates entered into a written agreement for the sale of an undivided two-thirds interest in the land to Dr. Wright for $20,000 and an undivided one-third interest to Leon D. Hogg for $10,000. Wright paid $17,500 in cash and gave his note for $2,500 due in six months, which he paid approximately 30 days after its due date. Hogg was to have paid $4,000 cash and did sign a note for $6,000. He never paid anything on his obligations. The contract of sale provided that default by one of the purchasers would not affect the rights of the other. Gates and his wife Doris executed a deed to Wright and Hogg on May 18, 1966 without specifying the respective interests of the grantees. This deed was placed in escrow at Citizens Bank of Marshall, Arkansas, along with the contract of sale. Neither was ever recorded, even though the escrow agreement mentioned the recording of the deed. Having received no payments, other than those made by Wright, from either Hogg or Wright, Gates gave notice to Hogg on more than one occasion that he considered the contract of sale canceled and the money paid forfeited. He also notified the escrow agent to the same effect and the bank released the documents held by it to Gates, at his request, sometime in 1967.

On August 18, 1969, the Gateses conveyed the property by warranty deed to Woods, as trustee for an undisclosed beneficiary. Gates, for several months prior to this conveyance, had advertised the property for sale in Houston, Texas newspapers as "repossessed property," and Woods had inquired about the property as a result. Gates

advised appellant of the previous transaction and Woods required that Gates and wife convey by warranty deed and furnish title insurance. Appellant did not consult either Wright or Hogg before purchasing. All three lived in Houston.

In early 1971, Wright called Gates and the escrow agent and inquired about a deed to the property. Gates advised Wright of the sale to Woods and stated that he had considered the contract of sale to him and Hogg canceled in 1967 for nonpayment of the purchase price.

Wright instituted this suit on July 2, 1971. J. A. and Doris M. Gates, who do not appeal, filed an answer. Woods also answered by general denial, except for the admission that he had obtained a warranty deed from the Gateses on or about August 18, 1969.

It was admitted that Woods had been advised of the contract with Wright and Hogg, but Woods stated that J. A. Gates advised him that this contract had been canceled on account of the failure of the purchasers to pay the purchase price agreed upon. Woods claimed that he held title for himself and J. Frank Arterburn and that each owned an undivided one-half interest.

After hearing the testimony, the chancellor made extensive findings, which included the following:

1. Doris M. Gates signed the original copy of the contract with Wright and Hogg, which had been lost, misplaced or destroyed.

2. Mrs. Gates ratified the contract by joining her husband in the execution of the deed placed in escrow at Citizens Bank of Marshall.

3. The check for $2,587.50 of Dr. Wright was accepted and cashed by J. A. Gates and this fully discharged his obligations to the Gateses for a two-thirds interest in the land.

4. The Gateses had no right to cancel this contract or to obtain possession of the deed executed by them.

5. Woods is not an innocent purchaser for value, because he was advised of the transaction before his purchase and was shown the contract and had the opportunity to inspect it.

The court held that the deed to Wright and Hogg should be recorded, but divested Hogg of the title to an undivided one-third interest and vested it in Woods, as trustee. Hogg had executed a quitclaim deed of his interest to J. A. and Doris Gates on October 30, 1967. We shall discuss the points relied upon by appellant in order.

I.

Appellant states that we must decide whether the disclosure to Woods of the unrecorded contract of sale with Wright and Hogg coupled with the disclosure by J. A. Gates of the actions taken thereunder by Gates to cancel the contract put Woods on sufficient notice to prevent his being a bona fide purchaser for value. We cannot say that the finding of the chancellor in this respect is clearly against the preponderance of the evidence. There is adequate evidence that Woods was informed of facts which would have put a reasonable man on inquiry to ascertain the rights of Woods in the transaction. His inspection of the contract should have disclosed to him that the default of one of the purchasers would not affect the rights of the other, that the sellers were obligated to place a deed, along with a copy of the contract, in escrow with Citizens Bank at Marshall, that there was no contract provision for forfeiture by the purchasers or cancellation by the sellers and that the contract called for the payment of most of the purchase price in cash. Yet Woods apparently accepted Gates' statements at face value and made no inquiry of either Wright, Hogg or the bank, even though he and his associate came to Marshall before contracting to buy the property. Although he admitted in a discovery deposition that this information triggered some questions in his mind, Woods did not even remember whether he asked Gates why the land was repossessed. He seemed to recall that Gates had related something about a down payment by Wright, but couldn't recall the amount. Even though the property was advertised for $17,000, Woods offered only $14,000, knowing that the previous sale had

been at $30,000. Woods knew that Gates had withdrawn the contract of sale from escrow.

It was only necessary that appellee show by a preponderance of the evidence that appellant had notice of such facts and circumstances as would put a man of ordinary intelligence and prudence on inquiry which, if diligently pursued, would lead to knowledge of his rights. *Grayson v. Hughes,* 166 Ark. 173, 265 S.W. 836; *Valley Planing Mill Co. v. Lena Lumber Co.,* 168 Ark. 1133, 272 S.W. 860. Such proof may be made by circumstantial evidence. *Krow & Neumann v. Bernard,* 152 Ark. 99, 238 S.W. 19. Whatever is notice enough to excite attention, put a party on guard and call for inquiry is notice of everything to which the inquiry might lead, and whenever one has sufficient information to lead him to a fact he shall be deemed conversant with it. *Henderson v. Ozan Lumber Co.,* 216 Ark. 39, 224 S.W. 2d 30; *Millman Lumber Co. v. Bryant,* 213 Ark. 277, 209 S.W. 2d 878. See also *Holloway v. Eagle,* 135 Ark. 206, 205 S.W. 113; *Love v. Bryson,* 57 Ark. 589, 22 S.W. 341; *Reynolds v. Moseley,* 32 F. 2d 979 (8th Cir. 1929). We find no error in this respect.

## II.

The chancellor found that the contract was signed by Doris Gates. He stated that he based his finding upon the testimony of J. A. Gates, the acceptance of the escrow by the bank, which the court inferred would not have been done unless both the grantors named in the contract had signed it, and a ratification by her through joining her husband in the execution of the deed to Wright and Hogg. The original of the contract had been lost and an unsigned carbon copy was introduced in evidence. Gates' testimony as to his wife's signature is somewhat equivocal. He was called as a witness by appellee and on direct examination testified that she had signed it before it was sent to Houston and repeated this admission after his attention was called to the fact that no signature of any party appeared on the copy exhibited. Later, on cross-examination, he professed confusion about the contract signed by his wife and said that he was mistaken in his testimony in that he was under the impression that the contract referred to was the original draft made by his

attorney in Marshall, which had been signed by his wife. He explained that this draft was never signed by all parties and that he had signed the redraft, about which he was asked on direct examination, but that his wife had not. The first draft listed Wright as the only purchaser. The letter of transmittal by which Wright and Hogg sent the contract to the bank to be held in escrow referred to the contract as a contract of sale for 400 acres of land from J. A. Gates and Doris Gates to Wright and Hogg. Wright's check for $17,500 payable to the bank for credit to the account of J. A. Gates and Doris M. Gates bears her endorsement. The note which Wright executed and paid was made payable to J. A. Gates and wife, Doris M. Gates. The deed placed in escrow with the bank was signed by Mrs. Gates. Mrs. Gates, a defendant in the action, did not testify and we find no explanation of this omission. When all these facts are considered together, we cannot say that the findings of the chancellor, who saw and heard Gates testify, were clearly against the preponderance of the evidence. In this respect we do not consider significant the fact that the deed did not specify that Dr. Wright was to have a two-thirds interest and Hogg one-third, as the contract provided, in view of the fact that the deed did not conform to the first draft of the contract, where Wright was to have been the sole purchaser. It was at least an attempted compliance with the contract. In weighing the testimony of Mr. Gates and considering the failure of Mrs. Gates to testify, the significance of their potential liability under their warranty to Woods cannot be overlooked.

### III.

As appellant points out, the testimony upon which he relies to establish an agency relationship between Wright and Gates is sparse indeed. He relies upon testimony of Dr. Wright that at a conference in his home when Gates was endeavoring to sell the land to Wright, Gates stated that he would be able to turn the property over within a year at a sizeable profit and would sell the property for Wright if Wright would buy it, coupled with Wright's explanation of his lack of interest in the first contract under which he was to be the only purchaser. In making that explanation, Wright stated that the draft

had to be revised to include Hogg as a purchaser and to substitute a deferred note and a down payment for a full cash payment in order to keep Gates interested in selling the property. It does not appear that this ingenious argument was advanced in the trial court and the issue does not appear to have been raised there. Gates certainly did not purport to have been acting as agent for Wright in selling the lands to Woods and his testimony lends no support to this argument. He could hardly have been acting as Wright's agent if he was taking the position, as he did, that all rights of the appellee were forfeited.

## IV.

We find no basis upon which we can sustain appellant's argument that Wright's cause of action was barred by Ark. Stat. Ann. § 37-209 (Repl. 1962) because it was not filed until more than five years after May of 1966, the month in which the contract was dated. A short answer to this contention might be that Gates, who did not appeal, pleaded the statute, but Woods did not. The Gateses moved to dismiss because of the bar of the statute, but Woods only demurred to the evidence. Be that as it may, Wright's cause of action did not accrue before the note was due November 12, 1966. This would be the earliest date for the commencement of the running of the statutory period. While appellant argues that the contract provided for immediate delivery of the Gates deed, we do not so construe it. The contract provided that the deferred purchase money be secured by a vendor's lien on the face of the deed and that the deed and contract be placed in escrow with the Citizens Bank of Marshall, to whom all deferred payments were to be made, and by whom proper receipts and acquittances were to be executed, but that the deeds were to be filed of record to reflect consideration of $10.00 and other considerations. It also prohibited the cutting of any timber, with certain exceptions, during the "life of the contract."

If there had been no money to be paid and nothing had remained to be performed by Wright as purchaser to obtain delivery of the deed on the date the contract was signed appellant might be correct in his contention, because the cause of action would have accrued at that time.

See *Harris* v. *King*, 16 Ark. 122. It may well be that Wright's cause of action did not accrue until Gates repudiated the contract, because Gates was the holder of the legal title as a constructive trustee for the purchaser from the moment the contract was executed. *McKim* v. *McLiney*, 250 Ark. 423, 465 S.W. 2d 911; *Williams* v. *Young*, 71 Ark. 164, 71 S.W. 669; *Harris* v. *King* supra. In any event, Gates did accept the payment made by Wright in December 1966, and Wright was in no position to demand a conveyance pursuant to the contract, particularly for an undivided two-thirds interest, until this note was paid. Since the suit was brought within five years from the due date of the note the bar of the statute did not apply.

Since appellant has failed to demonstrate error in the decree, it is affirmed.