BILL'S PRINTING, INC., and First Security Bank *v.*
George F. CARDER III and Sharon L. Carder

03-779                                              161 S.W.3d 803

Supreme Court of Arkansas
Opinion delivered April 29, 2004

*R. Bryan Tilley*; and *Barrett & Deacon, P.A.*, by: *D.P. Marshall Jr.* and *Leigh M. Chiles*, for appellants.

*John Patterson, P.A.*; and *Terry J. Lynn*, for appellees.

ANNABELLE CLINTON IMBER, Justice. Appellants Bill's Printing, Inc., and First Security Bank, bring this appeal from a circuit court's order quieting title in certain real property in favor of Appellees George F. Carder III and Sharon L. Carder (the Carders). The appellants contend that the circuit court erred in setting aside a cancellation deed issued by the State Land Commissioner and in finding that the Commissioner acted contrary to law in unilaterally cancelling the deed issued to the appellees. Alternatively, they assert on appeal that the circuit court erred in finding that Bill's Printing was not a bona fide purchaser. We hold that Bill's Printing is a bona fide purchaser and therefore reverse the order of the circuit court.

In 1993, Mary Scholes conveyed land, including Lot Fifteen in Heber Springs, Cleburne County, to her children Patrick and Laura Scholes. Patrick Scholes testified that that deed contained a statement that tax statements should be sent to "Pat Scholes, 1876 Cowden, Memphis, Tennessee 38104." In January 1994, Patrick Scholes moved to 3113 Hayley Cove in Germantown, Tennessee without notifying the Cleburne County tax collector of his new address.

On June 30, 1997, the Cleburne County tax collector certified Lot Fifteen, which was listed as owned by C. Patrick and Laura L. Scholes, 1876 Cowden Ave., Memphis, TN 38104, as forfeited to the state for nonpayment of taxes. The list stated that the Scholeses had been delinquent in payment of their real property taxes since 1994. On August 21, 1997, the Land Commissioner sent the Scholeses a notice by certified mail to the Cowden Avenue address in Memphis explaining that Lot Fifteen was certified to the state for delinquent taxes and that they must pay taxes, penalties, interests, and costs due or the land would be sold at a public sale on August 26, 1999. On September 3, 1997, the U.S. Postal Service returned the notice to the Land Commissioner marked undeliverable.[1]

On August 26, 1999, the Land Commissioner held a tax-delinquent land sale and sold Lot Fifteen to the Carders for $4,957.86. Mr. Carder testified that they paid real estate taxes on the land for the years 2000 and 2001.

---

[1] By Act 1376 of 2003, codified at Ark. Code Ann. § 26-37-301 (Supp. 2003), the notice provision has now changed so that actual notice must be given to the owner of a homestead if the Land Commissioner fails to receive proof that the certified mail was received.

In August 1999, a Cleburne County resident told Patrick Scholes that Lot Fifteen was offered for a tax sale. Scholes testified that he immediately called the Land Commissioner's office and requested a petition to redeem. On August 31, 1999, five days after the land was sold, the Land Commissioner's office sent a petition to redeem to Scholes. It included information that the sale date was "Subject to sale" and that the taxes for 1994–1997 with interest, penalties, costs, and fees totaled $302.39. The petition also listed the telephone and fax numbers by which to contact the Land Commissioner's office with any questions. The petition, in bold capital letters, directed the Scholeses to see the "other side for instructions." The instructions on the reverse side read that petitions to redeem:

> are valid for 90 days from the date printed. If 90 days has expired, an updated Petition to Redeem must be requested. Please be aware of the sale date of the property. To avoid the sale of the property, the past due amount must be paid in full. Possession of a valid Petition to Redeem does not postpone the sale date. In the event the property is sold, the record owner has 30 days to redeem the property. If not redeemed within 30 days, the sale is final and the property cannot be redeemed.

The Scholeses did not file a petition to redeem Lot Fifteen within thirty days of the tax sale. Accordingly, on September 29, 1999, the Land Commissioner issued a limited–warranty deed to the Carders for Lot Fifteen as a result of the August 26, 1999 sale. That deed was recorded in Cleburne County on October 7, 1999. On October 13, 1999, Patrick Scholes mailed the petition to redeem and a check in the amount of $302.39 to the Land Commissioner's office.

On October 21, 1999, Peggy Barnes, Chief Deputy of the Land Commissioner's office, wrote Patrick Scholes and said that she was returning his check, because Lot Fifteen was "sold on September 29, 1999,"and that a limited–warranty deed had been filed for record in Cleburne County.

On November 18, 1999, Patrick Scholes contacted the Land Commissioner's office, spoke with Carol Lincoln, an attorney with that office, and faxed a memo to Ms. Lincoln summarizing their conversation. In that memo, Scholes stated that he believed that he had ninety days to file his petition to redeem and that Ms. Lincoln stated that the sale date on the petition should have read

"August 26, 1999," instead of "Subject to sale." Also on November 18, Ms. Lincoln sent a memo to the Land Commissioner, recommending that he "cancel the sale" to the Carders and "allow the redemption," because "it is the policy of the office to write the sale information on the petition and highlight the information particularly the date the petition must be returned," which was not done.

On November 23, 1999, pursuant to Patrick Scholes' request, the Land Commissioner's office sent a second petition to redeem to Patrick and Laura Scholes for Lot Fifteen. The petition again stated that the sale date was "Subject to sale." The Land Commissioner's officer received the Scholes' completed petition to redeem for Lot Fifteen on December 6, 1999, which was 102 days after the tax sale. On December 8, 1999, the Land Commissioner issued a deed cancelling the Carders' limited-warranty deed for Lot Fifteen. The cancellation deed was recorded on December 30, 1999. On December 9, 1999, the Land Commissioner issued a redemption deed for Lot Fifteen to Patrick and Laura Scholes. The Scholeses' redemption deed was duly recorded on December 14, 1999.

Sometime in 2000, John Braswell, owner of Bill's Printing, Inc., testified that he was driving by Lot Fifteen in Heber Springs, noticed a "For Sale" sign, and called Patrick Scholes, who was listed on the sign with his telephone number. On October 7, 2000, the Scholeses issued a warranty deed for Lot Fifteen to Bill's Printing, Inc., for $42,000. John Braswell testified that he had a title company examine the title to Lot 15. Mr. Braswell testified that he has been mowing the lot since the purchase and paid taxes on it in the Spring of 2002, after receiving notice from Cleburne County that his taxes were due.

On December 21, 2000, George and Sharon Carder sued Bill's Printing, Inc., Patrick and Laura Scholes, and the State Land Commissioner. The Carders later added First Security Bank, which carried the mortgage on Lot Fifteen, as a party. The suit sought to cancel the cancellation deed issued by the Land Commissioner and to quiet title to Lot Fifteen in the Carders. On June 24, 2002, a bench trial was conducted by the circuit court.[2] Patrick Scholes testified that he was not told that the property was sold

---

[2] Pursuant to Amendment 80, the Cleburne County Chancery Court became a division of the Cleburne County Circuit Court on July 1, 2001.

when he contacted the Land Commissioner's office in August 1999 to request a petition to redeem. He also testified that no one knew that the Carders had any claim to Lot Fifteen when he closed the land sale to Bill's Printing, Inc., in October 2000.

Steve Hollowell, Executive Assistant to the Land Commissioner, testified at the bench trial that he believed the Land Commissioner had the authority to cancel a deed that he issued or to set aside a sale. He further stated that the Land Commissioner's office has written policies consisting of a looseleaf folder with examples of petitions to redeem, disclaimers, redemption deeds, and land patents but that there was no written policy instructing employees about what to do when a petition to redeem is issued after a tax sale but before the thirty-day redemption period has expired. Specifically, he testified that there was no written policy instructing employees to write the date of the actual sale on the petition to redeem, thus alerting the taxpayer that he or she has thirty days to redeem. He did testify that it was an unwritten standard operating procedure in the office to advise persons of those dates when a petition to redeem was mailed out, but mistakes could still be made as illustrated by the Scholeses' case.

On July 9, 2002, the circuit court issued its decree. The court found that the Cleburne County Tax Collector properly certified Lot Fifteen as delinquent on June 30, 1997; that the Land Commissioner properly notified the Scholeses by certified mail at their last known address; that the public sale of Lot Fifteen occurred on August 26, 1999; that the sale complied with Arkansas law, and no error was found to justify cancelling the limited-warranty deed granted to the Carders; that title to the property was vested in the Carders before the Land Commissioner issued the redemption deed; that the State held no interest in Lot Fifteen to convey to the Scholeses; that the Land Commissioner acted contrary to law in unilaterally cancelling the limited-warranty deed granted to the Carders; that the deed of cancellation is hereby cancelled; that the Land Commissioner never conveyed any title to the Scholeses after the recording of the deed of cancellation; that Patrick and Laura Scholes owned no interest when they conveyed Lot Fifteen by warranty deed to Bill's Printing, Inc.; that the Carders showed by a preponderance of the evidence that Bill's Printing, Inc., had notice of such facts and circumstances that would lead to knowledge of the Carders' claim to the property; and that title to Lot Fifteen is quieted and confirmed in the

Carders, and the claims of the Scholeses, the Land Commissioner, Bill's Printing, Inc., and First Security Bank are declared null and void.

On July 30, 2002, the circuit court issued an order, in which it found that Bill's Printing, Inc., was not a bona fide purchaser because the Carders' properly recorded their deed on October 7, 1999. According to the circuit court, the Carders' recorded deed served as notice to Bill's Printing of the Carders' interest in the property. The court further found that Ark. Code Ann. § 26-37-204 (Repl. 1997), does not give the Land Commissioner the authority to cancel or set aside a deed where the sale of the tax-delinquent land has been conducted in accordance with Arkansas law without error.

First Security Bank and Bill's Printing appealed to the Arkansas Court of Appeals, and that court affirmed the circuit court's decree that the Land Commissioner had acted contrary to law in unilaterally cancelling the limited-warranty deed issued to the Carders and that the cancellation deed be set aside. *See Bill's Printing, Inc. v. Carder*, 82 Ark. App. 466, 120 S.W.3d 611 (2003). We subsequently granted a petition for review filed by the appellants.

When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001). The critical issue in this case is whether the circuit court erred in quieting title in Lot Fifteen in favor of the Carders. Bill's Printing argues that the circuit court erred because the Land Commissioner acted within its authority in cancelling the Carders' deed, and, alternatively, that Bill's Printing was a bona fide purchaser who took title free and clear of the Carders' purported interest. Because we hold that Bill's Printing is a bona fide purchaser, we need not address whether the Land Commissioner exceeded his authority in cancelling the Carders' deed.

The following time line is critical to understanding the chain of title at the time Bill's Printing purchased the subject land:

| | |
|---|---|
| 1993 | Deed to the Scholeses recorded |
| September 29, 1999 | Land Commissioner's limited-warranty deed issued to the Carders |

| October 7, 1999 | The Carders' limited-warranty deed recorded |
| December 8, 1999 | Cancellation deed issued, cancelling the Carders' limited-warranty deed |
| December 9, 1999 | Redemption deed issued to the Scholeses |
| December 14, 1999 | Redemption deed to the Scholeses recorded |
| December 30, 1999 | Cancellation deed, cancelling the Carders' limited-warranty deed, recorded |

On October 7, 2000, or almost one year after both the cancellation deed and the Scholeses' redemption deed had been recorded, the Scholeses sold the property for the sum of $42,000 and issued a warranty deed to Bill's Printing, the purchaser. Prior to purchasing the property, the owner of Bill's Printing had verified ownership of the real property through a title company.

██ ██ In order to be a bona fide purchaser of land in Arkansas, one must take property in good faith, for valuable consideration, and without notice of a prior interest. *Wilkins v. Jernigan,* 195 Ark. 546, 113. S.W.2d 108 (1938); *Ellis v, Nickle,* 193 Ark. 657, 101 S.W.2d 958 (1937). There is no dispute about Bill's Printing taking the subject property in good faith and for valuable consideration. This case hinges on notice. In Arkansas, a buyer is on notice if he or she is aware of such facts and circumstances as would put a person of ordinary intelligence and prudence on such inquiry that, if diligently pursued, would lead to knowledge of those prior interests. *Massey v. Wynne,* 302 Ark. 589, 791 S.W.2d 368 (1990). This type of notice must be enough to excite attention or put a party on guard to call for an inquiry. *Killam v. Texas Oil & Gas Corp,* 303 Ark. 547, 798 S.W.2d 419 (1990). The party opposing the claim of a bona fide purchaser has the burden of proving such notice by a preponderance of the evidence. *Bowen v. Perryman,* 256 Ark. 174, 506 S.W.2d 543 (1974); *Woods v. Wright,* 254 Ark. 297, 493 S.W.2d 129 (1973).

██ In *Woods v. Wright,* 254 Ark. 297, 493 S.W.2d 129 (1973), this court held that disclosure to the party claiming bona fide purchaser status of an earlier recorded contract of sale coupled

with disclosure by the vendor of the actions he took to cancel that contract, put the party claiming bona fide purchaser status on notice of a prior interest. In that case, however, the party claiming to be a bona fide purchaser took a warranty deed after being informed by the seller that he had repossessed the land due to nonpayment. *Id.* In this case, the only notice to Bill's Printing would have stemmed from the Land Commissioner's cancellation deed issued after a tax sale coupled with a redemption deed issued by the Land Commissioner to the original owner. The critical distinction between *Woods v. Wright* and the case at bar is the source of the information that constitutes notice. In *Woods v. Wright, supra,* the party claiming bona fide purchaser status relied on the seller's words; whereas, in this case, the purchaser relied on a cancellation deed duly issued by the Land Commissioner. We have recognized that a public officer's actions are presumed to be valid and within the bounds of the law. *See Dilday v. State,* 300 Ark. 249, 778 S.W.2d 618 (1989). Thus, *Woods v. Wright* is inapposite.

Likwise, *Massey v. Wynne,* 302 Ark. 589, 791 S.W.2d 368 (1990), is distinguishable. In that case, a party claiming bona fide purchaser status failed to consult his own attorney or search the records after having had conversations with the party claiming a prior interest who indicated that the land had been sold to them. *Id.* Here, the Carders never informed Bill's Printing of their interest and in the year after the Land Commissioner cancelled their limited-warranty deed, the Carders never filed an action to quiet title, which would have availed them of the Arkansas lis pendens statute. *See* Ark. Code Ann. § 16-59-101 et seq. (1987) (filing of notice constitutes constructive notice of interest). Suffice it to say, the Carders sat on their claim until Bill's Printing purchased the subject property.

In short, there have been no cases where this court has specifically addressed the application of bona fide purchaser status to a real estate purchase in which the validity of a cancellation deed or a redemption deed issued by the Land Commissioner was challenged. Other jurisdictions, however, have applied the standards of a bona fide purchaser when tax titles were allegedly defective. *See, e.g., State ex rel. State Tax Comm'n v. Garcia,* 77 N.M. 703, 427 P.2d 230 (1967); *Aluminum Co. of America v. Mineral Holding Trust,* 157 Tex 54, 299 S.W.2d 279 (1956).

The case of *State ex rel. State Tax Comm'n v. Garcia,* 77 N.M. 703, 427 P.2d 230 (1967), is particularly instructive. The New

Mexico Tax Commission issued a redemption deed to Mr. Garcia who was not entitled to redemption. *Id.* Mr. Garcia then transferred the property by quitclaim deed to a third party, the Wilkeses. *Id.* Even though the redemption deed was within the chain of title, the Supreme Court of New Mexico held that the Wilkeses were bona fide purchasers. Likewise, the Texas Supreme Court held that the failure of a decree to include pertinent information did not put successors to the tax-sale purchasers on notice of any irregularities or fraud. *Aluminum Co. of America v. Mineral Holding Trust, supra* (noting that a layman ought not be required to discover a deficiency when two county officials charged with the duty acted entirely in good faith and without the suggestion of any fraud).

■■ As we pointed out earlier, the standard for bona fide purchaser status in Arkansas is well-settled: A buyer of land is on notice if he or she is aware of such facts and circumstances as would put a person of ordinary intelligence and prudence on such inquiry that, if diligently pursued, would lead to knowledge of those prior interests. *Massey v. Wynne, supra.* It is undisputed that the Land Commissioner has the power to issue cancellation deeds and redemption deeds in some circumstances. *See* Ark. Code Ann. § 22-6-109(b) (Repl. 2004); Ark. Code Ann. § 26-37-303 (Repl. 1997). Bill's Printing was entitled to presume that the Land Commissioner's actions were valid and within the bounds of the law. *See Dilday v. State,* 300 Ark. 249, 778 S.W.2d 618 (1989). To hold otherwise would require a party purchasing property to go behind a cancellation deed or redemption deed issued by the Land Commissioner and question that public officer's authority to issue the deed. Such an inquiry is beyond the scope of that which has heretofore been required in order to attain bona fide purchaser status in Arkansas.

In the instant case, Steve Hollowell, Executive Assistant to the Land Commissioner, testified at the bench trial that he believed the Land Commissioner had the authority to cancel a deed that he issued or to set aside a sale. Therefore, if Bill's Printing had made an inquiry at the Land Commissioner's Office, it would have been told that the property had been redeemed upon the Scholeses' payment of taxes. A similar inquiry to the Scholeses, or even to the Carders, would have elicited the same information.

■ This court will not require a party claiming bona fide purchaser status to make inquiry into the circumstances surround-

ing the legal legitimacy of a cancellation deed or redemption deed issued by the Land Commissioner. In the case at bar, we cannot say that the Carders proved by a preponderance of the evidence that Bill's Printing was put on notice so as to deny it bona fide purchaser status under the governing principles of law. *Bowen v. Perryman, supra.* The diligent pursuit of an appropriate inquiry into the facts and circumstances in this case would not have led to knowledge of the Carders' prior interest. Accordingly, we conclude that the circuit court clearly erred in finding that Bill's Printing was not a bona fide purchaser.

Reversed and remanded.

THORNTON, J., concurs.

BROWN, J., dissents.

RAY THORNTON, Justice, concurring. I concur in the majority's judgment that this case be reversed, but I would not base that reversal on the majority's *bona fide*-purchaser analysis.

In this case, the Land Commissioner acted pursuant to his interpretation of the applicable statutes, Ark. Code Ann. § 22-6-102(a) (Repl. 1996), Ark. Code Ann. § 26-37-204(b) (Repl. 1997), and Ark. Code Ann. § 26-37-301(b) (Repl. 1997), to set aside the limited-warranty deed that he had executed in favor of the Carders after the statutory period for redemption had passed. Even after the execution of a limited-warranty deed to the purchaser of property at a .tax sale, our statutes provide for a two-year window during which the previous owners may contest the sale in a court of law. Ark. Code Ann. § 26-37-203 (Repl. 1997). In my view, the Scholeses were deprived of their statutory right to contest the Land Commissioner's limited-warranty deed to the Carders in court because the Land Commissioner, convinced that the Scholeses were correct, exercised his assumed statutory authority to set aside and cancel his deed to the Carders. Even if this action by the Land Commissioner exceeded his authority, as argued by the appellees, it is clear to me that his action was sufficient to make further efforts by the Scholeses superfluous.

I believe this result amounts to a deprivation of statutory and property rights of the Scholeses in violation of due process of law. Due process is based in the Fifth Amendment to the United States Constitution made applicable to the States through the 14th

Amendment to the United States Constitution, as well as Article 2, § 8 and § 21 of the Arkansas Constitution. Due process protects rights that are created from sources such as state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). When the legislature defines a right by positively enacting it into law, it may not be deprived without constitutionally adequate procedures. *Id.* Due process of laws is grounded in the concept of fundamental fairness. We have previously stated that when a statutory right is at issue in a due-process challenge, the question becomes whether the situations of a particular case indicate fundamental fairness requires the protection of such a right. *Bearden v. Arkansas Dept. of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001).

Procedural due process requires notice and a reasonable opportunity to be heard. *Tsann Kuen Enterprises Company v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003) (quoting *State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999). Due process is fundamentally about having a meaningful opportunity to be heard in a meaningful time frame. I do not believe that due process is a formulaic or mechanical determination, but rather a flexible procedure relating to the time, place, and circumstance of the purported violation. A violation of due process requires state action to deprive someone of a right protected by law. *Id.* In *Landers v. Jameson*, Ark., S.W.3d (2003), we affirmed our reliance on the standards articulated in *Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982), in determining whether state action exists under a due-process analysis. The requirements for state action are that the deprivation be caused by the exercise of some right or privilege attributable to the state, such as as exercise of a supposed statutory authority, and that the deprivation be carried out by a state actor, such as the Land Commissioner cancelling a tax deed. *Landers, supra.*

In analyzing potential due-process violations, a three-prong analysis should be made. *Landers, supra.* First, a determination of what private interest is at stake and to balance that interest against the State's interest in the matter is to be considered. Second, a determination of the risk of erroneous deprivation of that right under the process to be afforded. Finally, the court should look to what interest the government has in the situation including the potential burden of additional administrative or procedural requirements. *Id.*

First, the private interest at stake here is the right of redemption satisfying the first prong of the three-prong analysis. The

legislature created a comprehensive and detailed statutory scheme for guaranteeing the right of redemption to landowners who failed to pay their taxes. The procedures, as required under the Arkansas Code, include a period of two years between certification of tax-delinquency and a tax-sale, the right of the owner at any time before the sale to pay all the taxes and fees outstanding to resume ownership, the right to have the sale set aside within thirty days by petitioning the Land Commissioner, and, additionally, the right to contest the sale in court for up to two years after the sale. *See* Ark. Code Ann. § 22-6-102(a), Ark. Code Ann. § 26-37-204(b), and Ark. Code Ann. § 26-37-301(b). The State has an interest in seeing the delinquent taxes paid, but it is not sufficient to outweigh the private interest in redemption. The tax-sale procedure and the redemption right of the tax-delinquent owners ensures that the State will be compensated no matter who owns the property.

The second prong requires an analysis of what protections are afforded the right in question. In this case, the procedural protections are significant. The procedural scheme enacted by the legislature affords the original owners several chances to redeem the land forfeited. The final protection afforded is the two-year window to challenge a tax sale in a court of law. These procedural protections should be viewed in their entirety and not individually. Here, the consequence of the Land Commissioner's actions, if deemed invalid, has the effect of depriving the Scholeses of the right to challenge the sale of their property in court. Had the full panoply of protections enacted by the legislature been afforded the Schloses, then there would have been adequate process of law.

The third prong asks what the additional burden on the mechanisms of the State in affording the process requested would be. There would be no additional burden on the State because Ark. Code Ann. § 26-37-203 establishes the right of the original land owner to challenge the tax sale in court. It is the court's function to hear such cases. Because they were deprived of their statutory right to challenge the tax sale in court, the Scholeses have been denied due process of law in this case.

Our holding in *Aldridge, supra,* where we held that a land owner may not be thwarted in an attempt to redeem tax delinquent land by the misfeasance or malfeasance of an agent of the State, is relevant to this case. While the failure to follow an informal office policy may not rise to the level contemplated in *Aldridge,* the Land Commissioner acting beyond his statutory authority certainly does. By acting *ultra vires,* the Land Commis-

sioner has created the current situation where the Scholeses had no recourse and were thwarted in their attempt to redeem the tax-delinquent property. Bills Printing, as the successors in interest to the Scholeses, should prevail because the Scholeses were deprived of their right of redemption without due process of law. The violation of this right occurred through their reliance on the Land Commissioner's office.

Arkansas has a long legislative and jurisprudential history of protecting rights to real property. The public policy may fairly be stated that the State of Arkansas holds the right to own and use real property to be of the highest regard. Ark. Const. Art. 2 § 22. This is evidenced by the cases cited preventing the loss of tax-delinquent land by reason of malfeasance or misfeasance of a public officer and by the comprehensive statutory protections the legislature extended to real property owners in redeeming tax-delinquent land. *See e.g. Aldridge v. Tryell,* 301 Ark. 116, 782 S.W.2d 562 (1990). Here, the legislature created a statutory right to bring a suit challenging a tax sale. Ark. Code Ann. § 26-37-203. When the Land Commissioner took action to cancel the sale to the Carders, he negated any right to further relief for the Scholeses because he had granted them the relief they sought. If the Land Commissioner acted contrary to law by cancelling the sale to the Carders, there is no way for the Scholeses to enforce their right to a trial court's determination of ownership because more than two years have passed since the date that the Land Commissioner took action to set aside the tax sale.

For the foregoing reasons, I concur in the judgment of the court, but believe this case should be decided on the basis that the Scholses were deprived of their statutory rights without due-process of law to challenge the validity of the conveyance to the Carders.

ROBERT L. BROWN, Justice, dissenting. I dissent because the majority opinion essentially nullifies inquiry-notice as this state's standard for real estate title searches and in doing so overrules more than one hundred years of real estate property law.

The majority holds that a purchaser of land (Bill's Printing) is a bona-fide purchaser for value without notice even when the chain of title shows that the land he bought was vested in a third party (the Carders) by limited-warranty deed. The majority does so based on a cancellation deed issued by the Land Commissioner to the Carders and a redemption deed issued to the original owners

(the Scholeses), even though it is clear that the Land Commissioner had no authority by statute to issue either deed. In doing so, the majority opinion runs roughshod over our statutes and case law, because it does not adhere to this state's time-honored test that a would-be purchaser should diligently inquire into a third-party's claim to the land. The majority appears to have abandoned this rule of property in the process.

### a. Arkansas Law

The majority cites no case law for the proposition that Bill's Printing was completely absolved of all further inquiry into the Carders' claim because of the Land Commissioner's *unauthorized* cancellation and redemption deeds.[1] Rather, the majority opinion relies on the principle that public officers are presumed to commit valid acts, and because of this, prospective purchasers can rely on those acts, even when they are *ultra vires* and even when that purchaser has a duty to inquire.

The apposite principles of title law, which apply to this case, have been adhered to in this state almost from its inception. *See* D. R. VARN, *Supplement to Jones' Arkansas Titles* § 102 (1959); PAUL JONES, JR., *The Arkansas Law of Title to Real Property* § 102 (1935). From the section on bona-fide purchasers of land in both Jones' and Varn's treatises, the following principles can be gleaned:

- absence of notice is an essential element of bona-fide purchaser status. *Ellis v. Nickle*, 193 Ark. 657, 101 S.W.2d 958 (1937); *Manchester v. Goeswich*, 95 Ark. 582, 130 S.W. 526 (1910).

- every purchaser is bound by whatever appears in the chain of title. *Tisdale v. Gunter*, 194 Ark. 930, 109 S.W.2d 1267 (1937).

- notice of facts that would put a person of ordinary intelligence on inquiry is equivalent to knowledge of all the facts that a reasonably diligent inquiry would disclose. *Trinity Royalty Com-*

---

[1] The Land Commissioner has authority to issue a cancellation deed and redemption deed under Ark. Code Ann. § 22-6-109(b) (Repl. 2004) and § 26-37-303 (Repl. 1997). Section 22-6-109 only allows cancellation for *non-payment of the purchase price,* and § 26-37-303 provides for redemption deeds but only after the statutory conditions for redemption have been met, such as tendering owed taxes and penalties within thirty days of the tax sale under Ark. Code Ann. § 26-37-202(e) (Repl. 1997). There is no statutory authority to do what the Land Commissioner did in this case.

*pany, Inc., v. Riggins,* 199 Ark. 939, 136 S.W.2d 473 (1940); *Gaines v. Summers,* 50 Ark. 322, 7 S.W. 301 (1887).

- whatever puts a party on inquiry amounts to notice where the inquiry becomes a duty and would lead to knowledge of the requisite fact by the exercise of ordinary diligence and understanding. *Dial v. Armstrong,* 195 Ark. 621, 113 S.W.2d 503 (1938); *Waller v. Dansby,* 145 Ark. 306, 224 S.W. 615 (1920).

In addition to these bedrock principles, our statutory law provides the following regarding constructive notice to would-be purchasers of all recorded deeds:

> (a) Every deed, ... affecting the title, ... to any real ... property, within this state which is, ... required by law to be acknowledged or proved and recorded shall be constructive notice to all persons from the time the instrument is filed for record in the office of the recorder of the proper county.

Ark. Code Ann. § 14–15–404(a) (Repl. 1998).

Arkansas is clearly an inquiry-notice state and has been for over one hundred years. The doctrine is defined as follows:

> ... Under the doctrine of inquiry notice, a purchaser of real estate is held to have a duty to make inquiries where the purchaser has actual knowledge from any source or constructive notice of facts that would have aroused the suspicions of a prudent purchaser and caused that purchaser to make further investigations. The purchaser is deemed to have notice of all facts that such investigations would have revealed.

11 David A. Thomas, *Thompson on Real Property* § 92.09(c)(3) (2d ed. 2002) (internal citations omitted).

A case that illustrates the inquiry-notice doctrine in Arkansas is *Woods v. Wright,* 254 Ark. 297, 493 S.W.2d 129 (1973). In *Woods,* we held that a subsequent purchaser was not a bona-fide purchaser for value without notice, because he had been told of a previous sale, which should have put him on inquiry. A diligent inquiry would have led him to a previous contract of sale and to the fact that only one prior purchaser had defaulted on the contract and not the other prior purchaser. We observed that the subsequent purchaser apparently had accepted at face value the prior

owner's statement about *cancelling* the contract. In holding as we did, we first referred to the standard about a reasonable person being put on inquiry due to notice of certain facts. We then added:

> Whatever is notice enough to excite attention, put a party on guard and call for inquiry is notice of everything to which the inquiry might lead, and whenever one has sufficient information to lead him to a fact he shall be deemed conversant with it.

*Woods,* 254 Ark. at 302, 493 S.W.2d at 131. We held that the subsequent purchaser should have contacted both parties to the contract, and because he did not, he was not a bona-fide purchaser for value without notice.

As in *Woods,* Bill's Printing was charged with notice that the Carders had a legitimate claim to Lot Fifteen and that the Scholeses had failed to redeem the land within thirty days of the tax sale, as required by Ark. Code Ann. § 26-37-202(e) (Repl. 1997). These facts easily defeat Bill's Printing's claim to be a BFP without notice.

### b. *Trial Court's Finding*

The circuit court found by a preponderance of the evidence that Bill's Printing was on notice of facts that would, following a diligent inquiry, disclose the Carders' claim to Lot Fifteen. The circuit court was correct. Under § 14-15-404(a), Bill's Printing had constructive notice of the Land Commissioner's limited-warranty deed issued to the Carders, which had been recorded one year previously on October 7, 1999. It further had notice, based on that limited-warranty deed, that real estate taxes had been delinquent on Lot Fifteen since 1994. Without question, a limited-warranty deed held by a third party like the Carders would put a person of ordinary intelligence on inquiry to determine its validity, especially when the sellers (the Scholeses) only received a quit-claim deed in the form of a redemption deed from the Land Commissioner. *See Massey v. Wynne,* 302 Ark. 589, 791 S.W.2d 368 (1990).

There is, too, the obvious point that a cancellation deed issued to the Carders raises a red flag as to what interest of the Carders was being cancelled by the Land Commissioner and by what authority. As already mentioned, the Land Commissioner had no statutory authority to issue the cancellation and redemption deeds. As was the case in *Woods v. Wright, supra,* Bill's Printing

knew of the Carders' interest in the land, because it was in the chain of title, and that, no doubt, is why Bill's Printing was granted a general warranty deed from the Scholeses, even though the Scholeses only got a quitclaim deed from the Land Commissioner.

The majority holds that the circuit court was clearly erroneous in finding that Bill's Printing was put on notice by the redemption and cancellation deeds and should have inquired further. The majority does so solely based on the fact that the Land Commissioner is a state official. Amazingly, the majority does not believe a diligent inquiry would include checking into the Carders' claim to the land or into the fact that the Scholeses failed to redeem the land within thirty days of the tax sale under Ark. Code Ann. § 26-37-202(e) (Repl. 1997). I cannot sanction such a truncated search into the chain of title.

### c. Foreign Case Law

Bill's Printing cited this court to no case law to support its theory that the Land Commissioner's actions, invalid though they may be, trump a purchaser's duty to make diligent inquiry in order to be a bona-fide purchaser without notice. Without Arkansas authority to support it, the majority waltzes into foreign case law to salvage its decision. *See State ex rel. State Tax Cmm'r, v. Garcia*, 77 N.M. 703, 427 P.2d 230 (1967); *Aluminum Co. of America v. Mineral Holding Trust, C.A.*, 157 Tex. 54, 299 S.W.2d 279 (1957). Neither case, however, involved a recorded deed in favor of a third party. In *Garcia*, the grantor of the land who deeded it to the bona-fide purchasers had defrauded the state to obtain title. No third-party claimant with a recorded deed in the chain of title was involved. In *Aluminum Co. of America*, the Texas Supreme Court held that failure to include judgment for penalties and interest in a foreclosure deed did not put purchasers at a tax sale on notice of irregularities or fraud. Again, that case did not concern notice occasioned by a third-party deed in the chain of title.

### d. Conclusion

In short, the majority opinion concludes that Bill's Printing need go no further in its "diligent inquiry" than the Land Commissioner's deeds. I disagree. As already set forth, Bill's Printing was deemed to have notice of the Carders' claim and Arkansas statutes and that was enough to deny it BFP without notice status. A diligent inquiry would have exposed the fact that the Land Commissioner had acted *ultra vires* when issuing those deeds.

Arkansas law is radiantly clear and has been for decades. We are an inquiry-notice state. Our statutes and case law underscore that what is in the chain of title places a potential purchaser on diligent inquiry. After hearing testimony, assessing witness credibility, and receiving the evidence, the circuit court found that Bill's Printing was put on notice. I cannot say that the court was clearly erroneous in this finding. Nor would I abandon the doctrine of inquiry-notice. For these reasons, I respectfully dissent.